UNITED STATES of America,
Plaintiff–Appellant,

v.

Willie J. IVERY, Defendant–Appellee.

No. 93–1232.

United States Court of Appeals,
Sixth Circuit.

Argued June 8, 1993.

Decided Aug. 4, 1993.

Sheldon Light, Office of U.S. Atty., Federal Building, Detroit, MI (argued and briefed), for plaintiff-appellant.

Anthony T. Chambers, Detroit, MI (briefed), Bonnie M. Warmack, Highland Park, MI (argued and briefed), for defendant-appellee.

Before: GUY and SUHRHEINRICH, Circuit Judges; and DOWD, District Judge.*

* The Honorable David D. Dowd, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

DOWD, District Judge, delivered the opinion of the court.

I.

The United States appeals the sentence imposed on Willie J. Ivery by the U.S. District Court for the Eastern District of Michigan pursuant to the U.S. Sentencing Commission's *Guidelines Manual* ("U.S.S.G." or "guidelines").

This appeal presents the issue of whether the upward adjustment required for "more than minimal planning" in a guidelines sentence in a multi-defendant case is determined by focusing on the planning efforts of the defendant to be sentenced or on the overall planning involved in the criminal conduct.

Ivery, along with co-defendants Anthony J. Satariano and Angela Melton, was charged in an indictment returned on February 27, 1992, with bank fraud, wire fraud, money laundering, and conspiracy, in violation of 18 U.S.C. §§ 1344, 1343, 1956, and 371. Shortly before trial, he entered a plea of guilty to wire fraud (Count Two of the indictment) pursuant to a plea agreement with the government.

The district court determined that the total offense level for the defendant was twelve (12) and the criminal history category was I providing a sentencing range of ten (10) to sixteen (16) months with permission for a split sentence. Consistent with the guilty plea agreement, the government takes the position that the total offense level should be sixteen (16), which includes six (6) levels for the base offense, ten (10) additional levels for the fraud which exceeded $500,000 and an additional two (2) levels for "more than minimal planning," offset by the two (2) level reduction for acceptance of responsibility. Consistent with the Presentence Report, the district court did not add the two (2) levels for "more than minimal planning," granted two (2) levels of reduction for acceptance of responsibility and an additional two (2) levels because of his finding that the defendant was a "minor participant."

A second issue presented for our review is whether it was error for the district court to apply a downward sentencing adjustment for "minor participant."

For the reasons set forth below, we affirm in part, reverse in part and remand the cause for resentencing consistent with this opinion.

## II.

Ivery was involved in a scheme to defraud NVR Savings Bank, a federal savings bank in McLean, Virginia, of over $763,000, and to launder the proceeds of the scheme.

Anthony Satariano, the Chief Financial Officer of NVR, saw an opportunity to embezzle funds from the bank and, through his sister Angela Melton, solicited the help of Ivery, a Detroit accountant. Ivery, in turn, recruited the help of Clifton and Roslyn Trotter. All of these parties expected to be compensated for their part in the scheme.

Ivery directed the Trotters' activities based on instructions obtained from Satariano through Melton. Ivery told the Trotters that "Tony," [1] an officer at a Virginia bank, had access to funds, and that their help was needed to establish a bank account to funnel the funds back to "Tony." Ivery told the Trotters to set up a corporate bank account using the name International Risk Services, to be known as "IRS." "Tony" would then wire transfer the funds at his disposal, destroying all records of the transfer. The purpose of the procedure was to conceal the true identity of "Tony" and to disguise the transaction as a tax payment to the Internal Revenue Service (hence, "IRS").

The Trotters set up the phony company and bank account in Philadelphia. On August 22, 1991, Satariano arranged for NVR to wire in excess of $763,000 to this account. After obtaining control of the funds, the Trotters undertook several efforts, again at Ivery's direction, to return the proceeds to Satariano. They purchased $100,000 in gold coins, which Mrs. Trotter delivered to "Tony" in Delaware. They also delivered to Satariano a number of signed blank checks for his use in obtaining access to the stolen funds.

In September of 1992, the Trotters had second thoughts and reported the scheme to the FBI. In return for an agreement that they would not be prosecuted, the Trotters cooperated with the FBI. The scheme was halted and the government recovered approximately $492,000 of the $763,000 taken.

On August 17, 1992, shortly before trial, Ivery entered a plea of guilty to wire fraud, as charged in Count Two of the indictment, pursuant to a plea agreement with the government.

On December 15, 1992, the district court imposed a sentence of five (5) months in a community treatment center to be followed by 180 days of home confinement and three years of supervised release. This sentence was consistent with that recommended by the Presentence Report. However, it was imposed over the government's objections.

## III.

■ Appellate review of guideline sentences is generally governed by 18 U.S.C. § 3742. See, U.S. v. Morrison, 983 F.2d 730 (6th Cir.1993). Under section 3742, we review de novo a sentencing court's interpretation of the guidelines, but we must uphold a sentencing court's factual findings unless they are clearly erroneous. Id. Those factual findings need not be based on proof beyond a reasonable doubt, but need only be supported by a preponderance of the evidence. U.S. v. Carroll, 893 F.2d 1502, 1506 (6th Cir.1990). With these principles in mind, we turn to the merits of the government's appeal.

## A.

■ The government argues first that it was error for the district court to refuse to apply the upward adjustment for "more than minimal planning" under U.S.S.G. §§ 2F1.1(b)(2) and 1B1.1, in the face of the stipulation in the plea agreement that such adjustment was applicable. We review this issue de novo.

The district court stated as follows:

I am not going to apply the two-level enhancement. I do not feel that Mr. Ivery did more planning than typical to commit this offense, and I think other parties are far more involved in this than he.

(Joint Appendix, at 83). It is apparent that the judge made his determination based on his perception of Ivery's role in the offense.

This is an incorrect legal standard to apply. The applicable guideline for this offense

---

1. The Trotters only knew Satariano as "Tony," so as to conceal his identity.

is U.S.S.G. § 2F1.1(b)(2), which provides that "[i]f the offense involved ... more than minimal planning ..., increase by 2 levels." "More than minimal planning" is defined as follows:

> "More than minimal planning" means more planning than is typical for commission of the offense in a simple form. "More than minimal planning" also exists if significant affirmative steps were taken to conceal the offense, other than conduct to which § 3C1.1 (Obstructing or Impeding the Administration of Justice) applies.
>
> "More than minimal planning" is deemed present in any case involving repeated acts over a period of time, unless it is clear that each instance was purely opportune. Consequently, this adjustment will apply especially frequently in property offenses.
>
> \*     \*     \*     \*     \*     \*
>
> In an embezzlement, a single taking accomplished by a false book entry would constitute only minimal planning. On the other hand, creating purchase orders to, and invoices from, a dummy corporation for merchandise that was never delivered would constitute more than minimal planning, as would several instances of taking money, each accompanied by false entries.

U.S.S.G. § 1B1.1, comment (n. 1(f)).

Although we have not yet directly addressed this point, the Eighth Circuit has specifically held that "more than minimal planning" is determined on the basis of the overall *offense*,[2] not on the role of an individual *offender*. *U.S. v. Wilson*, 955 F.2d 547

(8th Cir.1992); *U.S. v. West*, 942 F.2d 528 (8th Cir.1991).

In *U.S. v. Rust*, 976 F.2d 55 (1st Cir.1992), the government appealed from the sentence imposed, arguing that the district court clearly erred by finding that the offense did not involve more than minimal planning under U.S.S.G. § 2F1.1(b)(2). In reversing the sentence, the court of appeals observed:

> Thus, the Guidelines set out three situations, any one of which warrants an enhancement for "more than minimal planning": cases where more planning occurs than is typical for commission of the offense in a simple form; cases involving significant affirmative steps to conceal; and cases involving repeated acts over a period of time, unless each instance was purely opportune. *United States v. Maciaga*, 965 F.2d 404, 407 (7th Cir.1992).

*U.S. v. Rust*, 976 F.2d at 57.[3]

■ In the instant case, all three situations are present. The offense involved substantial planning in order to pass instructions from Satariano through Melton to Ivery and to establish the phony company and bank account. There were significant affirmative acts to conceal: the use of intermediaries to avoid detection of "Tony's" identity and role, the use of a phony bank account in the name "IRS," the destruction of NVR's records. Finally, the scheme also involved repeated acts over a period of time, none of which were "purely opportune."[4]

---

2. "Offense" is defined in U.S.S.G. § 1B1.1, comment (n. 1(*l*)), as "the offense of conviction and all relevant conduct under § 1B1.3 (Relevant Conduct) unless a different meaning is specified or is otherwise clear from the context."

> "Relevant Conduct" is defined in § 1B1.3(a)(1) to include:
>
> (A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and,
>
> (B) in the case of jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity,
>
> that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense....

3. Our review of the case law has uncovered many cases where a defendant challenges the application of a two level increase for "more than minimal planning." *See e.g., U.S. v. Kelly*, 993 F.2d 702 (9th Cir.1993); *U.S. v. Moore*, 991 F.2d 409 (7th Cir.1993); *U.S. v. Chapdelaine*, 989 F.2d 28 (1st Cir.1993); *U.S. v. Parker*, 989 F.2d 948 (8th Cir.1993); *U.S. v. Streich*, 987 F.2d 104 (2d Cir.1993); *U.S. v. Davidson*, 984 F.2d 651 (5th Cir.1993); *U.S. v. Eve*, 984 F.2d 701 (6th Cir.1993); *U.S. v. Colletti*, 984 F.2d 1339 (3d Cir.1992); *U.S. v. Chimal*, 976 F.2d 608 (10th Cir.1992); *U.S. v. Baum*, 974 F.2d 496 (4th Cir. 1992). However, we have discovered only the cited First and Eighth Circuit cases dealing with instances where the government challenges a sentence for failure to apply the upward adjustment.

4. Conduct is "purely opportune" only if it is spur of the moment conduct, intended to take advantage of a sudden opportunity. *U.S. v. Rust*, 976 F.2d at 57.

It is clear that the district court wrongly interpreted the guidelines and committed reversible error on this issue.

### B.

■ The district court gave Ivery the benefit of a two-level downward adjustment in offense level based on the court's conclusion that Ivery was a "minor participant" in the offense under U.S.S.G. § 3B1.2(b), despite the parties' stipulation to the contrary in the plea agreement. The government contends that this was clearly erroneous.

At the sentencing, the court reviewed the involvement of the various principals as follows:

Melton and Ivery's roles were very similar as far as this Court is concerned in its considered judgment. They were involved in the offense during the same period of time. They each appealed to someone else to carry through the offense, each committed wire fraud to relay messages, and they each expected compensation from Melton's brother.

The Court also feels that the Trotters could be considered more culpable than Mr. Ivery as their participation was greater than his. They opened an account at the bank in Pennsylvania, if I recall, where the embezzled funds could be and they were transferred—the Trotters transferred the embezzled funds to another account under his control; and Mrs. Trotter brought $100,000.00 worth of gold coins and delivered them to Satariano.

Additionally, the Trotters received approximately $170,000.00 from those embezzled funds.

So this Court concludes that Ivery and Melton's share was just about the same level of culpability and that they were less culpable than Satariano and the Trotters.

So this Court views them as minor participants in this and thus entitled to a two-level reduction.

(Joint Appendix, at 84–85).[5]

"The culpability determination is 'heavily dependent upon the facts,' and the defendant has the burden of proving mitigating factors by a preponderance of the evidence." *U.S. v. Perry*, 908 F.2d 56, 58 (6th Cir.) (citations omitted), *cert. denied*, 498 U.S. 1002, 111 S.Ct. 565, 112 L.Ed.2d 571 (1990). The trial judge's determination constitutes a factual finding, subject to the "clearly erroneous" standard of review. *U.S. v. Anders*, 899 F.2d 570, 580 (6th Cir.), *cert. denied sub nom. Weddle v. U.S.*, 498 U.S. 990, 111 S.Ct. 532, 112 L.Ed.2d 543 (1990).

The district court's findings and conclusion were not clearly erroneous. Accordingly, we uphold the court's application of a two-level downward adjustment in offense level.

### IV.

■ For the foregoing reasons, we AFFIRM IN PART, REVERSE IN PART and REMAND the cause for resentencing consistent with this opinion.[6]

---

5. The court also noted that the government identified Mrs. Melton as a minor participant. In the court's view, she was more culpable than Ivery, so if *she* was a minor participant, so was he. (Joint Appendix, at 84).

6. As a result of our rulings, the offense level for the defendant, prior to consideration of a reduction for acceptance of responsibility, is sixteen (16). This brings into play the November 1, 1992 amendment to Section 3E1.1(b) which now allows a three level reduction. The plea agreement which called for a two level reduction was reached on August 17, 1992, prior to the amendment. The sentence was imposed on December 15, 1992, after the amendment became effective. Consequently, the district court has discretion to apply either the two or three level reduction upon remand.