UNITED STATES of America,
Plaintiff–Appellee,

v.

K'Maryan PANADERO, Defendant–
Appellant.

No. 92–2571.

United States Court of Appeals,
Seventh Circuit.

Argued May 12, 1993.

Decided Oct. 21, 1993.

Barry R. Elden, Asst. U.S. Atty. and John J. Tharp, Jr. (argued), Office of the U.S. Atty., Cr. Receiving, Appellate Div., Chicago, IL, for plaintiff-appellee.

Richard L. Kagan and Anthony M. Petrone (argued), Chicago, IL, for defendant-appellant.

Before BAUER, KANNE and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

After pleading guilty to three counts of bank fraud and one count of making false statements on a loan application, K'Maryan Panadero was sentenced under the Guidelines to 132 months of incarceration. She appeals her sentence on numerous grounds. Because we find several errors in the district court's calculations, we vacate Panadero's sentence and remand for resentencing.

## I. Background

Between January 1986 and August 1991, K'Maryan Panadero stole nearly $2.4 million from several companies owned by Aaron Israel and his family, who employed her as a

bookkeeper. Panadero forged the signatures of Israel and his son David on company checks made payable to two companies she operated (Travelworld International and Asiaworld Productions), various real and fictitious persons, credit card companies, and merchants. Panadero concealed the theft by making false entries into the books, depositing forged checks into the accounts from which she stole, altering bank statements, and destroying the forged checks when they had been canceled and returned. For concealment purposes alone, Panadero forged more than 200 checks worth over $4 million, but those checks did not result in any additional loss to the Israel family.

After being arrested for that offense and released on bond, Panadero continued her spree, this time defrauding or attempting to defraud several banks. She deposited checks written on overdrawn credit cards into the accounts of various businesses she operated and then wrote checks to herself on the insufficiently funded accounts. In this manner, she stole nearly $50,000 from the First Chicago Bank of Ravenswood and attempted to steal $14,000 from the Albany Bank and Trust Company.

During this same period, Panadero also submitted a falsified home mortgage application to Household Mortgage Services, a division of Household Bank. Panadero indicated that the loan of $87,800 was for her daughter Katrina when it was actually intended for Panadero's sister, whose own credit history disqualified her from receiving a loan. Panadero also falsely represented Katrina's income, submitted false 1988 and 1989 federal tax returns and W–2 forms in Katrina's name, and falsely "certified" that she had borrowed $10,000 from Katrina and would be repaying her within ten days.

The government charged Panadero by way of an information with three counts of bank fraud in violation of 18 U.S.C. § 1344 and one count of making false statements on a loan application in violation of 18 U.S.C. § 1014. Panadero waived indictment and pled guilty to all four counts.

The three bank fraud counts were grouped for sentencing purposes pursuant to Guidelines section 3D1.2(d). They were then considered under Guidelines section 2F1.1, which directed a base offense level of six (U.S.S.G. § 2F1.1(a)), to be increased by twelve levels to reflect the amount of money that Panadero had stolen (U.S.S.G. § 2F1.1(b)(1)(M)). That offense level was then increased by two levels for more than minimal planning (U.S.S.G. § 2F1.1(b)(2)), by three levels for committing two of the offenses while released on bond (U.S.S.G. § 2J1.7), and by two levels for abusing a position of private trust (U.S.S.G. § 3B1.3). The offense level for counts I, II, and III was therefore 25.

The false loan application count produced a base offense level of six (U.S.S.G. § 2F1.1(a)), which was increased by six levels to account for the potential loss of $87,000 (U.S.S.G. § 2F1.1(b)(1)(G)). Because the resulting offense level of 12 was more than nine levels below the offense level for the bank fraud group, it was disregarded pursuant to Guidelines section 3D1.4(c). The district court believed that the resulting adjusted offense level of 25 underrepresented the seriousness of Panadero's offense and departed upward by three levels, placing Panadero at level 28.

Panadero's criminal history included two state court convictions for forgery. On February 26, 1981, she was convicted after forging 236 checks worth $76,183 while working as a bookkeeper for the Institute of European Studies. She was sentenced to five years of probation and community service. Panadero violated her probation, however, when she again committed forgery and was arrested on September 14, 1982. This time, she had stolen approximately $80,000 from her employer, Midwest Products of Illinois, which went out of business due to the loss. After pleading guilty, Panadero was sentenced to six months of weekend imprisonment (a total of 52 days) and three years of probation, and was ordered to pay restitution of $2,367.97. The two state court sentences produced one criminal history point each under Guidelines section 4A1.1(c). Because Panadero's theft from the Israels, which occurred between January 1986 and August 1991, coincided with her state court probation term, she received two additional criminal

history points under Guidelines section 4A1.1(d). The district court found that the resulting criminal history category of III underrepresented the seriousness of Panadero's criminal history and departed upward to category V. Panadero's sentencing range was thus 130–162 months. The district court sentenced her to 132 months, to be followed by 5 years of supervised release.

On appeal, Panadero argues that the district court erred by refusing to reduce her offense level for acceptance of responsibility, by increasing her offense level for more than minimal planning, and by departing upward from both the adjusted offense level and the criminal history category. We address her arguments in turn.

## II.  Acceptance of Responsibility

Guidelines section 3E1.1 provides that the district court may reduce a defendant's offense level by two if "the defendant clearly demonstrates a recognition and affirmative acceptance of responsibility for [her] criminal conduct." Panadero argues that she should have received the reduction because she not only pled guilty to the charges, but also freely provided potentially incriminating information to the government and the Israels (who had brought a civil action against her) regarding the fraudulent transactions.

■ Although pleading guilty may demonstrate acceptance of responsibility, doing so does not automatically entitle a defendant to the reduction. U.S.S.G. § 3E1.1, App. Note 3; *United States v. Beserra*, 967 F.2d 254, 255 (7th Cir.), *cert. denied,* — U.S. ——, 113 S.Ct. 419, 121 L.Ed.2d 341 (1992). Whether a defendant has accepted responsibility is a factual finding that depends primarily on credibility assessments. *United States v. McKenzie*, 922 F.2d 1323, 1329 (7th Cir.), *cert. denied,* — U.S. ——, 112 S.Ct. 163, 116 L.Ed.2d 127 (1991). We will therefore overturn the sentencing court's determination only if it is clearly erroneous. *United States v. Yanez*, 985 F.2d 371, 374 (7th Cir. 1993). Panadero bears the burden of demonstrating that the district court's finding was "without foundation." *United States v. White*, 993 F.2d 147, 151 (7th Cir.1993). She has failed to do so.

■ The district court rested its decision on two grounds. First, the court found that Panadero did not qualify for the reduction because she had continued to engage in criminal activity following her arrest. We approved this basis for denying the reduction in *United States v. Franklin*, 902 F.2d 501, 506 (7th Cir.), *cert. denied,* 498 U.S. 906, 111 S.Ct. 274, 112 L.Ed.2d 229 (1990). *See also United States v. Jordan*, 890 F.2d 968, 974 (7th Cir.1989). The district court clearly did not err here in finding that a defendant who had defrauded several banks while awaiting disposition of similar charges had not accepted responsibility for her criminal conduct.

■ The court also denied the reduction because it found Panadero's acceptance of responsibility to be insincere. Although Panadero contends that this finding was "simply stated, in essence, without more" (Panadero Brief at 17), the district court's finding was in fact well-reasoned, supported by the evidence, and consistent with the law of this Circuit. The court found that although Panadero had pled guilty, she "represent[ed] a paradigm case of someone who pleads guilty but does not accept personal responsibility for her own acts in the moral sense." (June 23, 1992 Tr. at 11.) The court believed that instead of expressing actual remorse, Panadero had accepted responsibility only in order to reduce her sentence. The court noted that Panadero had in the past committed similar crimes, pled guilty, received light sentences, and then resumed her criminal activity upon release. Denial of the reduction on this basis is consistent with our precedents that recognize the distinction between actual acceptance of responsibility and merely seeking to reduce one's sentence. *See White*, 993 F.2d at 151; *Franklin*, 902 F.2d at 505–06. The district court's refusal to grant the reduction was therefore appropriate.

## III.  More than Minimal Planning

■ Guidelines section 2F1.1(b)(2) requires the district court to increase the offense level by two in cases of fraud that involved "more than minimal planning." "We review a finding of 'more than minimal

planning' for clear error, and reverse it only if we are left 'with a definite and firm conviction that a mistake has been committed.'" *United States v. Moore*, 991 F.2d 409, 412 (7th Cir.1993) (quoting *United States v. Lennick*, 917 F.2d 974, 979 (7th Cir.1990)).

Panadero argues that her conduct did not involve "more than minimal planning" because rather than having an organized plan, she merely "filled out paperwork in any haphazard manner." (Panadero Brief at 18.) But Panadero misconstrues the phrase, which is defined in Application Note 1(f) to Guidelines section 1B1.1:

> "More than minimal planning" means more planning than is typical for commission of the offense in a simple form. "More than minimal planning" also exists if significant affirmative steps were taken to conceal the offense ... "More than minimal planning" is deemed present in any case involving repeated acts over a period of time, unless it is clear that each instance was purely opportune.

Indeed, the application note deals specifically with the crime of embezzlement, leaving little doubt that the enhancement was proper in Panadero's case:

> In an embezzlement, a single taking accomplished by a false book entry would constitute only minimal planning. On the other hand, creating purchase orders to, and invoices from, a dummy corporation for merchandise that was never delivered would constitute more than minimal planning, as would several instances of taking money, each accompanied by false entries.

Because Panadero engaged in "several instances of taking money, each accompanied by false entries," the enhancement was clearly appropriate.

## IV. Departures

■■ 18 U.S.C. § 3553(b) authorizes a district court to depart from the Guidelines range if:

> the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.

We review departures "to ensure that the grounds for the departure were appropriate, that the factual findings underlying the departure were not clearly erroneous, and that the extent of the departure was reasonable." *United States v. Tai*, 994 F.2d 1204, 1213 (7th Cir.1993). Here, Panadero does not contest the factual basis or reasonableness of the .departures, but contends only that they were based on improper grounds. We will therefore review them for that flaw only. Whether the grounds for departure were proper is a legal question, which we review de novo. *United States v. Willey*, 985 F.2d 1342, 1349 (7th Cir.1993); *United States v. Frazier*, 979 F.2d 1227, 1229 (7th Cir.1992).

### A. Offense Level Departure

The district court departed upward from Panadero's adjusted offense level, finding that it did not adequately reflect the seriousness of her conduct. The court added three levels, one for each of three reasons: (1) to account for the numerous checks that Panadero had forged in order to conceal her activity, (2) to reflect the fact that Panadero depended on criminal activity for her livelihood, and (3) to account for the loan misrepresentations charged in count IV, which otherwise had been disregarded. Panadero contests the first and third of those departures.

### i. Additional Forgeries

■ The court found that Panadero's adjusted offense level did not account for the checks that Panadero had forged for the purpose of concealment because, although she forged checks worth several million dollars for this purpose, the checks did not result in any actual loss. This ground for departure is inappropriate. The Background Commentary to Guidelines section 2F1.1 makes clear that the Sentencing Commission intended that offense levels for fraud be linked to the amount of loss:

> Empirical analyses of pre-guidelines practice showed that the most important factors that determined sentence length were the amount of loss and whether the offense was an isolated crime of opportunity or

was sophisticated or repeated. Accordingly, although they are imperfect, these are the primary factors upon which the guideline has been based.

As the government argues, Application Note 10 to the guideline does envision that an upward departure may be warranted when "the loss determined ... does not fully capture the harmfulness and seriousness of the conduct." In all the examples provided in that note, however, the fraud caused some harm *in addition to* the monetary loss, such as psychological or physical harm, endangerment of national security, diminishing confidence in an important institution, or some other nonmonetary harm. Here, the additional forged checks caused no harm beyond the monetary loss already accounted for in Panadero's offense level. Instead, all of the forged checks—those through which Panadero actually took funds as well as those by which she concealed her theft—had a single purpose and effect, which was the theft of $2.4 million dollars.

In addition, to any extent that the additional checks reflected that Panadero's conduct was more harmful or serious (as the Government contends), that has already been accounted for in the two-level increase for more than minimal planning under Guidelines section 2F1.1(2). The Background Commentary to the section explains:

> The extent to which an offense is planned or sophisticated is important in assessing its potential harmfulness and the dangerousness of the offender, independent of the actual harm. A complex scheme or repeated incidents of fraud are indicative of an intention and potential to do considerable harm. In pre-guidelines practice, this factor had a significant impact, especially in frauds involving small losses. Accordingly, the guideline specifies a 2–level enhancement when this factor is present.

Departure on the basis of the additional forgeries was therefore inappropriate.

### ii. Count IV

■ The district court also departed upward to account for Panadero's count IV conviction for making false statements on a loan application, which had not otherwise contributed to Panadero's sentence. This departure was also inappropriate because the Sentencing Commission clearly considered this situation and determined that the conduct should not be counted. Count IV was disregarded under Guidelines section 3D1.4(c) because the offense level for that count was more than nine levels below the offense level for counts I, II and III, which had been grouped pursuant to section 3D1.1. Guidelines section 3D1.4(c) provides:

> Disregard any Group that is 9 or more levels less serious than the Group with the highest offense level. Such Group will not increase the applicable offense level but may provide a reason for sentencing at the higher end of the sentencing range for the applicable offense level.

Thus, the Guidelines specifically considered the case of an additional, less serious count and determined that the conduct should be disregarded except to the extent that it might influence the district court's choice of sentence from within the applicable guidelines range.

■ Despite the clear mandate of section 3D1.4(c), the government argues that the departure was supported by the Background Commentary to section 3D1.4, which provides:

> In unusual circumstances, the approach adopted in this section could produce adjustments for the additional counts that are inadequate or excessive. If there are several groups and the most serious offense is considerably more serious than all of the others, there will be no increase in the offense level resulting from the additional counts. Ordinarily, the court will have latitude to impose added punishment by sentencing toward the upper end of the range authorized for the most serious offense. Situations in which there will be inadequate scope for ensuring appropriate additional punishment for the additional crimes are likely to be unusual and can be handled by departure from the guidelines.

We find no basis in that language to support a departure here. The district court pointed to nothing "unusual" about this situation, and we also discern no special circumstance. Instead, this case appears to fall squarely within the Sentencing Commission's vision. Count IV is therefore one that the Commis-

sion determined should not contribute to the adjusted offense level. The mere fact that a crime is discounted under the guideline certainly cannot itself constitute the unusual circumstance that would justify departure. This departure was therefore improper. *See United States v. Connor*, 950 F.2d 1267, 1275 (7th Cir.1991) (upward departure for pretrial escape attempt that was disregarded under section 3D1.4 was not justified because "the Sentencing Commission had determined how to calculate the offense level when multiple counts were involved, and an escape attempt was not sufficiently unusual to warrant disregarding the guidelines."). *Cf. United States v. Dawson*, 1 F.3d 457, 462 (7th Cir.1993) ("[section] 3D1.4 does take into account six charged offenses and the district court engaged in impermissible double-counting when it departed upward based upon Mr. Dawson's sixth charged bank robbery.").

## B. Criminal History Departure

[13] Guidelines section 4A1.3 provides:

If reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes, the court may consider imposing a sentence departing from the otherwise applicable guidelines range.

Here, the district court based its increase on two independent grounds. First, it raised Panadero's category by one because it found that Panadero's criminal history category, which was relatively low due to the leniency of Panadero's state court sentences, did not adequately reflect her likelihood of recidivism. The court noted that despite intervening arrests and convictions, Panadero had engaged in theft and fraud almost continuously since arriving in the United States in 1976. The court explained:

She has shown, I think, throughout her entire course of conduct in the United States a kind of implacable will to steal and to lie and to forge.... [F]rom 1976

on Mrs. Panadero has been an habitual and effective forger and embezzler. She stole a lot of money from a lot of people over a very long period of time.

(June 23, 1992 Tr. at 34.) The court reasoned that Panadero's repetition of similar conduct, despite intervening convictions and expressions of remorse, reflected a propensity for recidivism greater than that reflected in her criminal history category. In *United States v. Schmude*, 901 F.2d 555, 559 (7th Cir.1990), we found that a criminal history category may indeed be inadequate when a defendant has been repeatedly convicted for the same offense, and we approved departure on that basis. We explained:

[I]n calculating a defendant's Criminal History Category, the Guidelines treat all prior convictions equally whether or not they are similar to the offense for which a defendant is being sentenced. Rationally, if a defendant has been convicted for the same offense more than once, he has demonstrated the need for greater sanctions to deter him from committing that same crime again—greater sanctions than might be required for a defendant who has never been convicted of a similar offense.

*Id.; see also United States v. Goines*, 988 F.2d 750, 778 (7th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 241, 126 L.Ed.2d 195 (1993); *United States v. Dzielinski*, 914 F.2d 98, 101–02 (7th Cir.1990). Departure on this ground was therefore proper.

The court increased Panadero's criminal history category by one additional level because she had continued to engage in fraud following her initial arrest—that is, she committed the acts charged in counts II–IV after being released on bond for the conduct charged in Count I.[1] Guidelines section 4A1.3(4)—which provides that the criminal history category may underrepresent actual criminal history or the likelihood of recidivism when the defendant "committed the instant offense while on bail or pretrial release for another serious offense"—expressly au-

---

1. The court explained:

Were it only the past criminal history involved in my determination, the criminal history category would be 4. But I raise the criminal history to 5 because of the post-charging conduct of the defendant in this case.

(June 23 Tr. at 35). Although there is some indication that the court was also taking into account the fact that Panadero had applied for bookkeeping jobs following her release without informing prospective employers of the charges against her (*see id.* at 34), the court's discussion as a whole makes clear that the court was pri-

thorizes such a departure. *See also United States v. Berkowitz*, 927 F.2d 1376, 1391 (7th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 141, 116 L.Ed.2d 108 (1991); *Franklin*, 902 F.2d at 508.

At the same time, this departure appears to pose a possible double-counting problem. Panadero had already received a three-level increase in her offense level pursuant to Guidelines section 2J1.7 for committing offenses while released on bond. As noted earlier, section 3553(b) authorizes departures only for factors that have not been adequately accounted for by the Guidelines. *See also* U.S.S.G. § 5K2.0.[2] A one category criminal history departure based on the same factor for which Panadero had already received a three-level increase in offense level may constitute impermissible double counting.[3] On remand, the district court should therefore reconsider this departure.

## V. Conclusion

The district court did not err in denying Panadero a reduction for acceptance of responsibility or by increasing her offense level for more than minimal planning. Because

marily concerned about Panadero's criminal activity during that period (*see id.* at 33–35).

2. Guidelines section 5K2.0 does provide that: [T]he court may depart from the guidelines, even though the reason for departure is taken into consideration in the guidelines (*e.g.* as a specific offense characteristic or other adjustment), if the court determines that, in light of unusual circumstances, the guideline level attached to that factor is inadequate.

The court here made no such determination. *See United States v. Carey*, 895 F.2d 318, 323–24 (7th Cir.1990).

3. The section 2J1.7 increase applied only to counts II and III, which were grouped with count I. It did not apply to count IV, which was not grouped with the other counts. But that does not alleviate the potential problem. If Panadero had received a separate three-level increase on count IV, the offense level for that count would have been 15. That would still have been more than nine levels below 25 (the offense level for counts I, II, and III), so that count IV still would have been disregarded under section 3D1.4(c). The fact that Panadero committed the offenses named in counts II, III and IV while released on bond may therefore have already been accounted for to the full extent possible under the Guidelines, in which case a departure on that basis would be inappropriate.

two of the court's offense level departures were based on inappropriate grounds, however, we vacate Panadero's sentence and remand for resentencing.[4] On remand, the court should also reconsider its criminal history departure to the extent that it was based on Panadero's post-arrest offenses.

4. In *Williams v. United States*, —— U.S. ——, ——, 112 S.Ct. 1112, 1120, 117 L.Ed.2d 341 (1992), the Supreme Court confirmed that departure on an invalid ground amounts to an incorrect application of the Guidelines. 18 U.S.C. § 3742(f)(1) requires a remand when a sentence is imposed "as a result of an incorrect application of the sentencing guidelines." The *Williams* court explained that "[w]hen a district court has intended to depart from the guideline range, a sentence is imposed 'as a result of' a misapplication of the Guidelines if the sentence would have been different but for the district court's error." *Id.* The Court then provided this guidance for making that determination:

[O]nce the court of appeals has decided that the district court misapplied the Guidelines, a remand is appropriate unless the reviewing court concludes, on the record as a whole, that the error was harmless, *i.e.*, that the error did not affect the district court's selection of the sentence imposed.

*Id.* at ——, 112 S.Ct. at 1120–21. Because there is no basis in this record for us to conclude that these errors did not affect the district court's selection of a sentence, we must remand for resentencing. *See also Dawson*, 1 F.3d at 465–66; *United States v. Mount*, 966 F.2d 262, 265 (7th Cir.1992).