UNITED STATES of America, Plaintiff,

v.

Bill Gene BEAN, Defendant.

No. 1:92–CR–31.

United States District Court,
N.D. Indiana,
Fort Wayne Division.

July 21, 1994.

Tina L. Nommay, Fort Wayne, IN, for U.S.

James J. Abbs, Kendallville, IN, for Bill Gene Bean.

## ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on defendant's and the governments's objections to the Presentence Investigation Report (PSR) prepared by the United States Probation Office following the remand of this case from the Seventh Circuit Court of Appeals for resentencing. *See, United States v. Bean,* 18 F.3d 1367 (7th Cir.1994).

## DISCUSSION

A complete recitation of the facts applicable to this case is unnecessary as they have been adequately addressed by the Seventh Circuit and by this court in its prior orders relating to this matter. The court shall develop the facts as necessary when discussing a particular objection.

### Acceptance of Responsibility

■ Defendant argues that he should receive a two (2) level decrease in his sentence for acceptance of responsibility under U.S.S.G. § 3E1.1(a) as he voluntarily paid restitution to the victim, Lincoln National Bank, before he was found guilty of bank fraud pursuant to 18 U.S.C. § 1344. Not surprisingly, the government argues that defendant should not receive a decrease in the calculation of his sentence for acceptance of responsibility. The government correctly points out that defendant has never acknowledged that he had the requisite intent necessary to commit bank fraud. Defendant maintains that he did nothing wrong. Also, the government argues that because this is defendant's third conviction for fraud defen-

dant has demonstrated a pattern of fraudulent conduct, and thus, should not receive any decrease in his sentence for acceptance of responsibility.

U.S.S.G. § 3E1.1 provides the authority for the sentencing court to award a decrease to a defendant's sentence for acceptance of responsibility and states in pertinent part:

> If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels.

U.S.S.G. § 3E1.1(a).

> In determining whether a defendant qualifies under subsection (a), appropriate considerations include, but are not limited to, the following:
>
> > voluntary payment of restitution prior to adjudication of guilt.

U.S.S.G. § 3E1.1, comment. (n.1(c)).

Thus, the guidelines are structured in such a way that the trial court may decrease a defendant's sentence for payment of restitution prior to his adjudication of guilt without requiring the defendant to admit to any wrongdoing. *See, United States v. Bean,* 18 F.3d 1367, 1368–69 (7th Cir.1994).

In this case, although defendant has never admitted to any wrongdoing, defendant voluntarily paid restitution prior to his adjudication of guilt. Therefore, the court decreases defendant's sentence by two levels for acceptance of responsibility. *Id.* at 1368 ("Bean repaid the bank before the adjudication of guilt, and the district court therefore was entitled to award a reduction for acceptance of responsibility even though Bean denied guilt.").

### Criminal History Points

■ The government argues that defendant should receive two (2) additional points, instead of one (1) additional point, for his criminal history pursuant to U.S.S.G. § 4A1.3. The government asserts that an upward departure is warranted because defendant's criminal history is not adequately represented by the increase of only one (1) point for his criminal history. Specifically, the government points out that this is defendant's third conviction for a fraud related

offense and defendant has therefore demonstrated a need for greater sanctions to deter him from committing the same crime again. *See, United States v. Panadero,* 7 F.3d 691, 697 (7th Cir.1993). Defendant argues there are no circumstances warranting an upward departure as all of the factors have been adequately addressed within the guidelines.

The PSR indicates that defendant has a prior federal conviction for bank fraud, 18 U.S.C. § 1344, and a prior federal conviction for wire fraud, 18 U.S.C. § 1343. The two (2) convictions rely upon totally unrelated facts. However, pursuant to U.S.S.G. § 4A1.1, the convictions are considered "related" for sentence guideline calculation purposes because they were consolidated and defendant was sentenced for both of these offenses on April 14, 1989, in United States District Court before the Honorable James T. Moody. Thus, the U.S. Probation Department correctly increased defendant's sentence by one (1) point.

Pursuant to U.S.S.G. § 4A1.3, the trial court may depart upwards from the applicable guideline range if the court finds the defendant's criminal history underrepresented by the defendant's criminal history category. U.S.S.G. § 4A1.3 provides in pertinent part:

> If reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes, the court may consider imposing a sentence departing from the otherwise applicable guideline range.

The court is not persuaded that defendant's criminal history category is so inadequate as to improperly represent defendant's past criminal activity. Of course, the court acknowledges the proposition that a defendant may require greater sanctions to deter him from committing the same crime again, *United States v. Panadero,* 7 F.3d 691, 697 (7th Cir.1993), but does not feel that the facts of this case warrant a departure for that purpose. The facts of *Panadero* are distinguishable from the facts of the instant case. Most important is the fact that the defendant in *Panadero* depended on criminal activity for her livelihood. No such allegation has

been made in the instant case. Therefore, the court declines to depart upward and assess an additional point against defendant for his criminal history.

## Amount of Loss

■ The government argues that the amount of loss sustained by the victim, Lincoln National Bank, for guideline calculation purposes is $75,000.00. In support of its position, the government draws the court's attention to the amount of the insufficient fund check (NSF) defendant deposited in Lincoln National Bank drawn on defendant's account at Summit Bank; $75,000.00. The government also indicates that defendant made restitution to Lincoln National Bank in the amount of $75,000.00. Finally, the government cites *United States v. Strozier,* 981 F.2d 281, 284 (7th Cir.1992) which states that "loss" may be the amount a defendant "intended" to cause.

Defendant asserts that the amount of loss in this case is $63,940.35. This is the amount of the check defendant wrote to Migler Corporation drawn on defendant's Lincoln National Bank account which had insufficient funds to cover the check. Moreover, defendant maintains that the government has failed to demonstrate that he "intended" to cause a loss of $75,000.00, and thus, the court must fix the loss at the actual loss sustained by the victim; $63,940.35.

The court begins its analysis with U.S.S.G. § 2F1.1, comment. (n.7) which provides in pertinent part:

> Valuation of loss is discussed in the Commentary to § 2B1.1 (Larceny, Embezzlement, and Other Forms of Theft). As in theft cases, loss is the value of the money, property, or services unlawfully taken; it does not, for example, include interest the victim could have earned on such funds had the offense not occurred. Consistent with the provisions of § 2X1.1 (Attempt, Solicitation or Conspiracy), *if an intended loss that the defendant was attempting to inflict can be determined, this figure will be used if it is greater than the actual loss.*

(emphasis provided).

U.S.S.G. § 2B1.1, comment. (n.2) states that loss "means the value of the property taken, damaged, or destroyed."

The court must first determine the actual loss experienced in this case. The basic facts relative to defendant's check kiting scheme are not complex. On or about May 1, 1991, defendant wrote an NSF check from his Lincoln National Bank account payable to Migler Corporation for $63,940.35. Shortly thereafter, defendant wrote another NSF check payable to Lincoln National Bank from his Summit Bank account for $75,000.00 to cover the $63,940.35 check written to Migler. Lincoln National Bank honored the $63,940.35 check and suffered an actual loss for the amount of that $63,940.00 check because the $75,000.00 check written against the Summit Bank account was also an NSF check. Thus, the victim, Lincoln National Bank, suffered an actual loss of $63,940.35.

■ Next, the court must determine whether defendant intended to cause a loss greater than the actual loss inflicted. If the court determines that defendant intended to inflict a loss greater than the actual loss experienced by the victim, defendant shall be sentenced according to the intended loss. *See*, U.S.S.G. § 2F1.1, comment. (n.7); *United States v. Holiusa*, 13 F.3d 1043 (7th Cir. 1994).

Upon the basis of the evidentiary record as it now stands, the court finds that defendant did not intend to inflict any loss greater than the actual loss experienced by Lincoln National Bank or $63,940.35. The government has simply failed to demonstrate sufficient facts that would lead the court to conclude that defendant intended for Lincoln National Bank to experience a loss greater than $63,940.35.

The government relies heavily upon the fact that Lincoln National Bank credited defendant's account with $75,000.00 and that defendant therefore had access to a line of credit in that amount. The government argues:

Pursuant to the Guideline USSG § 2B1.1, Commentary 2 "loss" means the value of the property taken, damaged or destroyed." The loss to Lincoln was the money credited to Bean's account against which he had access ... The loss is the entire amount the defendant fraudulently deposited in the Lincoln account to insure there were sufficient funds in CARE's account to pay the $63,940.35 check upon presentment.

(Memorandum In Support of Sentencing Objections, p. 5–6).

The government's argument that defendant intended a greater loss is not supported by the evidence or by their own argument. The government properly points out that "loss" is defined as the value of property *taken*, but then states that the "loss" to Lincoln National Bank was the money credited to Bean's account to which he had *access*. However, under these facts, the court does not equate access with taken. Without more evidence, the court cannot find that because defendant had access to the funds he necessarily intended to take the entire amount.

The government cites *United States v. Strozier*, 981 F.2d 281 (7th Cir.1992) arguing that as the defendant in that case, defendant in the instant case intended to defraud the victim of all of the accessible amounts in the account. However, *Strozier* is distinguishable on its facts.

In *Strozier*, the defendant opened an account with rubber checks from two separate financial institutions purportedly worth $45,000.00, flew to Las Vegas and withdrew $12,000.00 by negotiating and cashing three casino checks. The defendant then made another fraudulent deposit into the account in the amount of $160,000.00. He then spent $24,000.00 from that account using printed checks he had ordered for that purpose. He also opened a second account using the printed checks in the amount of $200,000.00. Defendant issued and negotiated twelve checks on this second account. The defendant was finally arrested approximately one (1) month after he set his scam into motion.

From these facts, the Seventh Circuit Court of Appeals held that it was reasonable for the trial court to conclude that the defendant intended to defraud the victim of the total amount in the accounts and that only his arrest prevented him from continuing his scam. *Strozier*, 981 F.2d at 284. However, in the instant case there is no pattern demonstrating defendant intended to escalate the stakes of his kite, nor that he intended to

defraud the victim of whatever amount was available to him in the account.

The conclusion that defendant did not intend a loss greater than the actual loss is supported by the government's own argument. The government asserts that defendant deposited the NSF check written against the Summit Bank account into the Lincoln National Bank account "to insure there were sufficient funds in CARE's account to pay the $63,940.35 check upon presentment." Thus, arguably the express reason for depositing the $75,000.00 NSF check into the Lincoln National Bank account was only to cover the $63,940.35 check previously written to Migler Corporation.

In sum, there is simply insufficient evidence to support a finding that defendant intended to inflict a loss greater than the actual loss experienced by Lincoln National Bank. In addition, the government's own argument seems to support the finding that defendant intended only to defraud Lincoln National Bank $63,940.35 even though he had a cushion of $75,000.00 with the NSF check. Thus, the court fixes the loss in this case to be the actual loss suffered by Lincoln National Bank, $63,940.35.

### More Than Minimal Planning

■ The government asserts that defendant should be assessed two (2) points in his guideline calculation for more than minimal planning pursuant to U.S.S.G. § 2F1.1(b)(2)(A) because defendant's conduct in this case exhibits more than minimal planning necessary to effectuate simple bank fraud. Not surprisingly, defendant argues that he should not be assessed an additional two (2) points for more than minimal planning. Defendant states that his check kiting scheme was relatively simple and that his case, when compared to other bank fraud cases, does not have the earmarks necessary for an enhancement of two (2) points for more than minimal planning.

Guideline 2F1.1(b)(2)(A) provides for a two (2) point increase in the offense level when the offense involved more than minimal planning. Guideline 2F1.1(b)(2)(A) directs the reader to U.S.S.G. § 1B1.1, comment. (n.

1(f)) for the definition of more than minimal planning and states in pertinent part:

> "More than minimal planning" means more planning than is typical for commission of the offense in a simple form. "More than minimal planning" also exists if significant affirmative steps were taken to conceal the offense . . .

> "More than minimal planning" is deemed present in any case involving repeated acts over a period of time, unless it is clear that each instance was purely opportune. Consequently, this adjustment will apply especially frequently in property offenses . . .

If defendant is to be assessed two (2) additional points for more than minimal planning, the point assessment must fall under the first prong of the definition of more than minimal planning. That is, it must be found that defendant engaged in "more planning than is typical for commission of the offense in a simple form."

■ Furthermore, the increase cannot come from any significant steps that were taken to conceal the offense. *United States v. Bean,* 18 F.3d 1367 (7th Cir.1994) (wherein the court remanded this cause on precisely this issue finding this court in error where it based an increase for conduct concealing the offense). Moreover, the increase cannot come from any repeated acts over a period time as neither the government nor defendant has identified any such repeated acts and this court is unaware of any evidence which would support an increase for more than minimal planning under this prong.

On the particular point of more than minimal planning, the Seventh Circuit Court of Appeals provided the framework for this court to follow in determining whether an increase of two (2) points is warranted in this case. The court stated:

> The right question to ask is whether Bean's offense involved more than minimal planning than is usual for bank fraud. Recall that the note to § 1B1.1 speaks of more planning "than is typical for commission of the offense in its simple form." The "offense" is the crime of which the defendant has been convicted, not of the particular way in which he committed it.

Thus the district court should compare the circumstances of this case with other fraud offenses, and not only with frauds committed by kiting checks.

*Bean,* 18 F.3d at 1370.

Thus, instead of looking only at other bank fraud offenses involving check kiting schemes in order to determine if more than minimal planning occurred for the instant offense, the court is to compare the instant bank fraud offense to all other kinds of bank fraud.

Therefore, before the court compares this bank fraud case involving check kiting to other cases involving other forms of bank fraud, the court must first determine the relative complexity of the instant offense. Again, on this particular point, the court is not without guidance.

Bean's kite was relatively simple (two checks floated between two banks) and was not carefully planned. Because *all* check kiting involves multiple checks, this offense did not bear signs of unusual planning compared with other kites—although it might entail slightly more planning than materially false statements on a loan application, which also comes within the fraud guideline.

*Bean,* 18 F.3d at 1370 (emphasis in original). Furthermore, the Seventh Circuit Court of Appeals noted that writing multiple checks is the means by which the fraud succeeds and that Bean stopped with one (1) cycle. *Id.*

This court is in agreement with the Seventh Circuit Court of Appeals on the issue of the complexity of defendant's check kiting scheme. In terms of operating a check kiting scheme in order to defraud a bank, defendant could not operate a more simple form of check kiting. Defendant utilized only two (2) NSF checks to complete his fraud and stopped with one cycle.

Having determined that defendant's check kiting scheme was the simplest form of check kiting that could result in bank fraud, the court must now compare defendant's check kiting scheme with other forms of bank fraud and determine whether defendant's check kiting scheme required more planning than is typical for the commission of the offense (bank fraud) in its simple form.

At the outset it should be noted that the court is reluctant to find that defendant's conduct required more than minimal planning under the guidelines. As previously noted, defendant's check kiting scheme could not have been any more simple in form; two (2) checks, one (1) cycle. For the court to find more than minimal planning in this particular check kiting case, would result in a decision, when read in its essence, that would hold that all check kiting cases for bank fraud involve more than minimal planning.

The court is of the opinion that to adopt such a ruling may very well serve for the exception, finding more than minimal planning, to swallow the rule, the base level offense. The only instances where a point assessment for more than minimal planning would not be applicable would be for instances of bank fraud that are purely and fantastically opportune. Perhaps the base level offense should be raised instead of finding more than minimal planning in every context. Quickly, the courts may soon adopt a view of more than minimal planning to include circumstances to which the United States Sentencing Commission never envisioned the enhancement to apply. The court believes that such a determination regarding more than minimal planning in the context of bank fraud through check kiting should be resolved by the United States Sentencing Commission who has the resources and time to properly evaluate all of the case law and legal opinions on such a course of action.

In any event, the court does not find defendant's conduct to constitute more than minimal planning in the context of bank fraud. Of course, all of the bank fraud cases reviewed by this court where an enhancement for more than minimal planning was assessed are distinguishable on their facts in one way or another. This fact only reaffirms the view that all sentencings are different and that under the facts of the instant case, no additional points should be assessed against defendant for more than minimal planning.

However, one theme was consistent throughout the cases reviewed. There was always some further step which occurred

during the course of events that went beyond what was necessary to commit the offense in simple form. This was true no matter what the underlying conduct which constituted the act of bank fraud.

Furthermore, most of the cases reviewed by the court where there was an enhancement for more than minimal planning relied either exclusively or primarily upon the "repeated acts" prong of the definition. If the facts of the particular case would support reliance primarily upon the repeated acts prong, the facts also generally supported the reliance upon the other prongs of the definition: (1) more planning than is typical for commission of the offense is simple form, and (2) significant affirmative steps taken to conceal the offense. Moreover, the fact that there were a very few number of bank fraud cases with facts comparable to the facts of the instant case where the more than minimal planning enhancement was applied indicates to this court that the enhancement under the facts of this case is inappropriate.

The court will now briefly compare the instant case to other bank fraud cases involving more than minimal planning and demonstrate that the facts of the instant case do not support a two (2) point enhancement to the offense level for more than minimal planning because the bank fraud in the instant case was committed in simple form.

### Check Kiting

First, the court shall address the one (1) case cited by the government, *United States v. Starr*, 986 F.2d 281 (8th Cir.1993), in support of its position that the facts of this case warrant a two (2) point enhancement for more than minimal planning in that defendant's check kiting scheme involved more planning than typical for the offense of bank fraud. The defendant in *Starr*, using an alias, opened up an account at a bank in the name of an authentic charitable organization. About six months later, the defendant, using another alias, opened up another account at another bank. A check drawn on the first bank was deposited into the account at the second bank. This check, however, was returned because the account it was drawn upon was closed. Because the bank had

honored the check, it suffered a loss of about $750.00. The defendant was convicted of bank fraud, 18 U.S.C. § 1344, and appealed his sentence.

On appeal the Eighth Circuit Court of Appeals upheld the enhancement of the defendant's sentence for more than minimal planning finding that the offense involved more planning than is typical for commission of the offense in simple form. *Id.* at 282. The court specifically held:

> This case involves more than simply writing a check on a closed account. [The defendant] opened the account at Mercantile Bank using an alias, then closed it six months later. The following month [the defendant] opened an account at Community Bank using a different alias, and later directed an acquaintance to deposit the check drawn of the closed Mercantile account into the Community account. Community Bank honored the bad check and suffered a loss.

*Id.*

*Starr* is the most analogous case to the instant case on its facts. Both involve relatively simple check kites. However, in *Starr*, the defendant opened and closed accounts using aliases and under the name of a charitable organization with which he had no connection. Furthermore, the defendant recruited another accomplice to help the scheme succeed. In the instant case, defendant did not utilize aliases or the names of charitable organizations to open or close accounts. Nor did defendant recruit anyone to help the scheme succeed. The facts in *Starr* demonstrate that little extra which the court believes is necessary to find more than minimal planning in the bank fraud context.

### Embezzlement

In *United States v. Panadero*, 7 F.3d 691 (7th Cir.1993), the defendant was a bookkeeper who managed to embezzle nearly $2.4 million within five (5) years from her employer. Upon being released after her arrest for that offense, she defrauded or attempted to defraud several banks. She deposited checks written on overdrawn credit cards into accounts of various businesses she oper-

ated and then wrote checks to herself on the insufficiently funded accounts. She managed to steal approximately $50,000.00 from one bank and attempted to steal another $14,000.00 from another bank utilizing this scheme.

The defendant plead guilty to three counts of bank fraud and appealed her sentence. The defendant argued that the enhancement was improper because "rather than having an organized plan, she merely 'filled out paperwork in any haphazard manner.'" *Panadero*, 7 F.3d at 695. The Seventh Circuit Court of Appeals held that the two (2) point enhancement for more than minimal planning was appropriate under the circumstances. *Id.* The court held that the guidelines, specifically U.S.S.G. § 1B1.1, comment. (n. 1(f)), fully covered the embezzlement involved in the case:

> [i]n an embezzlement, a single taking accomplished by a false book entry would constitute only minimal planning ... Because [the defendant] engaged in several instances of taking money, each accompanied by false entries, the enhancement was clearly appropriate.

*Id.*

Although the court is less than clear under which prong of more than minimal planning it was proceeding when it decided the enhancement was appropriate, this court interprets the quoted passage as recognizing that the defendant's scheme involved repetitive acts.

Unlike *Panadero*, the instant case has no allegation of repetitive acts on the part of defendant in order to effectuate his fraudulent scheme. Once again, that little extra which the court believes is necessary to find more than minimal planning in the bank fraud context is absent in the instant case.

In *United States v. Chimal*, 976 F.2d 608 (10th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1331, 122 L.Ed.2d 715 (1993), the defendant was employed as the comptroller of a resort owned and operated by the Mescalero Apache Tribe. The defendant was altering the daily deposit slips of the resort. The defendant would add a check to the deposit ticket and remove an equivalent amount in cash, thus keeping the total amount of the deposit the same. Most of the substitutions involved commission checks that the resort received from vending machine contractors. The defendant never recorded the receipt of the commission checks in the daily deposit log.

Defendant was convicted of two counts of embezzlement from an Indiana tribe pursuant to 18 U.S.C. § 1163 and appealed her convictions and her sentence. The Tenth Circuit Court of Appeals affirmed the decision of the district court in all respects and wrote only briefly on defendant's challenge to the two (2) level increase for more than minimal planning:

> Defendant Chimal had access to the checks and concealed them until the time was right to make the switch for cash on the deposit slips. These actions involved repeated acts and required planning over an extended period of time.

*Chimal*, 976 F.2d at 613.

Although the fraud in *Chimal* does not involve a bank, the principles relating to more than minimal planning certainly cross over to the bank fraud context. The Tenth Circuit Court of Appeals quickly recognized that the embezzlement scheme was complex and required daily maneuvering on the part of the defendant if the scheme was to succeed.

However, the bank fraud in the instant case required no more planning than writing out two checks. There was no complex daily scenario that defendant had to effectuate in order for the fraud to succeed.

In *United States v. Dealy*, 936 F.2d 580, 1991 U.S.App. LEXIS 14822 (9th Cir.1991), the defendant plead guilty to bank fraud and appealed his sentence arguing that he should not have received a two (2) level increase in his guideline calculation for more than minimal planning because his actions in committing bank fraud were the minimum he could have done to obtain the fraudulent loan. The Ninth Circuit Court of Appeals held that the district court's findings that the defendant's conduct involved more than minimal planning were not clearly erroneous.

The Ninth Circuit noted that the defendant obtained a fraudulent loan by using a

false middle name, a false social security number and a driver's license fraudulently obtained by using false biographical information. The Ninth Circuit held that the defendant provided a chain of false information in order to obtain the loan, and thus, was eligible to receive the two (2) point increase for more than minimal planning. *Dealy*, 1991 WL 118545, 1991 U.S.App. LEXIS 14822, *4 (9th Cir.1991) (citing *United States v. Fox*, 889 F.2d 357, 351–62 (1st Cir.1989).

In the case at bar, defendant supplied no information to the banks in order to carry out his fraud. Defendant merely wrote two (2) checks and waited for the normal banking procedures to process his checks. Thus, the instant case, unlike *Fox*, does not have the requisite earmarks requiring the two (2) point enhancement for more than minimal planning as defendant's scheme did not involve more planning than typically necessary to carry out the offense of bank fraud.

In *United States v. Deeb*, 944 F.2d 545 (9th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1597, 118 L.Ed.2d 312 (1992), the defendant appealed his sentence stemming from his conviction of conspiracy to embezzle funds from a federally insured bank, embezzlement from a federally insured bank, and bank fraud. The defendant argued that the upward adjustment was inappropriate because his conviction stemmed from only a single taking. *See,* U.S.S.G. § 1B1.1, comment. (n. 1(f)).

A co-defendant, who was a bank employee, miscoded a $309,586.85 check. The defendant reopened a previously inactive account with the bank into which the miscoded check was deposited. Another accomplice then opened an account at the same bank using a fictitious name. The opening deposit into the new account was a $305,000.00 personal check made payable to the other accomplice under the fictitious name drawn by the defendant on his account. The sum of $297,021.00 was withdrawn from the account over the next fifteen days.

After reciting the above facts, the Ninth Circuit concluded that the embezzlement scheme consisted of more than just a single taking accomplished by a false book entry and held that the two (2) point enhancement

for more than minimal planning was applicable. *Deeb*, 944 F.2d at 547. The court further held that under the facts of the case, the two (2) point increase for more than minimal planning could also be justified because the defendants took significant steps to conceal the offense. *Id.*

In the instant case, defendant did not operate under fictitious names, miscode any checks or draft the help of any accomplice to make the fraud succeed. The case at bar is simply void of any facts, when compared to other bank fraud cases as demonstrated by *Deeb*, that support the proposition that defendant's fraud required more planning than is typically necessary to accomplish the offense of bank fraud.

In *United States v. Ivery*, 999 F.2d 1043 (6th Cir.1993), the chief financial officer of a federal savings bank decided to seize upon an opportunity to embezzle funds from the bank. He solicited the help of his sister and defendant. The defendant then solicited the help of two other individuals. The defendant directed the actions of the two individuals he recruited based upon instructions he received from the other two participants. The defendant instructed the two individuals to set up a corporate bank account under the name International Risk Services, to be known as IRS. The defendant told the two individuals the officer at the bank, whose name was concealed from these two individuals, would wire transfer funds into the account and then destroy all records of the transfer. The purpose of the procedure was to conceal the true identity of the officer and to disguise the transaction as a tax payment to the Internal Revenue Service.

In excess of $763,000.00 was transferred into the account. At the direction of the defendant and in an effort to return the funds to the bank officer so that he could split up the proceeds among all of the participants, the two individuals purchased $100,000.00 worth of gold coins and provided the bank officer with numerous blank checks for his use in obtaining access to the stolen funds. Eventually, the two individuals whom the defendant had been directing had a change of heart and informed the FBI of the

bank fraud. The defendant entered into plea agreement with the government and plead guilty to one count of wire fraud. The trial court imposed its sentence and the government appealed arguing that the trial court erred in not awarding defendant a two (2) point increase in his sentence calculation for more than minimal planning.

The Sixth Circuit Court of Appeals held that defendant should have received the two (2) point increase for more than minimal planning as the fraud qualified for the increase under all three prongs of the definition of more than minimal planning. *Ivery,* 999 F.2d at 1046–47.

> In the instant case, all three situations are present. The offense involved substantial planning in order to pass instructions form [the bank officer] through [his sister] to defendant and to establish the phony company and bank account. There were significant affirmative acts to conceal: the use of intermediaries to avoid detection of [the bank officer's] identity and role, the use of a phony bank account in the name "IRS," the destruction of [ ] records. Finally, the scheme also involved repeated acts over a period of time, none of which were "purely opportune."

*Id.*

Clearly, the facts of the instant case and the amount of planning involved to successfully defraud Lincoln National Bank do not begin to approach the level of planning found in *Ivery* where the increase for more than minimal planning was unquestionably appropriate. The facts of *Ivery* demonstrate the usual case where the enhancement for more than minimal planning for the offense of bank fraud is generally applicable.

As indicated *supra,* most of the cases where the increase is warranted involve not only substantial planning, but also include acts to conceal the offense and repeated acts. As this short review of current case law demonstrates, the check kiting scheme of defendant did not require more planning than is typically necessary to commit the offense of bank fraud. Thus, defendant shall not be assessed an additional two (2) points for more than minimal planning.

*CONCLUSION*

For all of the foregoing reasons, defendant shall receive a two (2) point reduction for acceptance of responsibility, the court declines to depart upwards and award defendant another criminal history point, but instead calculates defendant's criminal history category to be II, the court fixes the amount of loss in this case at $63,940.35 and defendant and shall not be assessed an additional two (2) points for more than minimal planning.