87 F.3d 1323
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee and Cross-Appellant,
v.
B & M FARMS, Defendant-Appellant and Cross-Appellee,
UNITED STATES of America, Plaintiff-Appellee and Cross-Appellant,
v.
Jo Ann BREWER, Defendant-Appellant and Cross-Appellee,
UNITED STATES of America, Plaintiff-Appellee and Cross-Appellant,
v.
Kevin F. BREWER, Defendant-Appellant and Cross-Appellee.
 Nos. 95-30118, 95-30134, 95-30119, 95-30133, 95-30144, 95-30162.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 9, 1996.
Decided June 21, 1996.
 
 1
 Before: PREGERSON and TASHIMA, Circuit Judges, and JONES, District Judge.*
 
 
 2
 MEMORANDUM**
 
 
 3
 This case arises out of an alleged scheme to defraud the government of farm subsidies through use of a fictitious partnership. Defendants B & M Farms, Kevin F. Brewer, and Jo Ann Brewer (collectively "defendants") are a putative Montana partnership and two of its partners, who are husband and wife. A jury convicted all defendants of one count of mail fraud and two counts of federal program fraud. They appeal from their convictions and the government cross-appeals from their sentences.
 
 
 4
 We have jurisdiction to review the judgments of conviction under 28 U.S.C. § 1291, and the sentences under 18 U.S.C. § 3742. We affirm the convictions, but vacate defendants' sentences and remand for resentencing.
 
 FACTUAL AND PROCEDURAL BACKGROUND
 
 5
 Kevin F. Brewer and Jo Ann Brewer, husband and wife, have farmed in and around Forsyth, Montana since the mid-1950s. They now own extensive holdings of land in four Montana counties.
 
 
 6
 Farmers, such as the Brewers, are eligible for federal farm subsidy programs, including the Wheat and Feed Grain Program ("WFGP") and the Conservation Reserve Program ("CRP"). The United States Department of Agriculture's Agricultural Stabilization and Conservation Service ("ASCS") administers these programs. Payments under these programs are limited to an annual maximum of $50,000 per program, per single farming entity.[1]
 
 
 7
 However, if a farm is operated as a general partnership, each partner may enable the partnership to increase its annual payment limits by an additional $50,000 under both programs. An ASCS official testified that, for a partnership to be eligible for the raised limits, its partners have to make "significant contributions" towards the partnership of (1) capital, land, or equipment; and (2) labor not compensated by wages. Management activity also "contributes" to the partnership.
 
 
 8
 Until 1986, the Brewers' farming business operated as a sole proprietorship, with the Brewers owning all land and equipment and exercising complete managerial control. In 1986, Kevin F. Brewer signed a partnership agreement with two of his sons, Steven and Kevin M., and two longtime employees, Michael McLeod and John MacLeod (unrelated). The agreement formed B & M Farms, a Montana partnership. The Brewers' employees became "partners" of B & M Farms by making a $1 capital contribution. Defendants then represented on annual payment limitation forms submitted to the ASCS that B & M Farms was an equal partnership with each partner contributing equal amounts of land, equipment, labor not compensated with wages, and management. Between 1986 and 1993, B & M Farms received hundreds of thousands of dollars a year in WFGP and CRP farm subsidies. B & M Farms received $264,011 for crop year 1990, $323,103 for 1991, $236,143 for 1992, and applied for $242,207 for 1993.
 
 
 9
 The partnership's roster changed somewhat over the years. In 1989, the Brewers' son, Kevin M., left B & M Farms. Each of the remaining four partners thereafter supposedly held a 25 percent interest. In 1990, Michael McLeod left the partnership after receiving $1 for his interest. Jo Ann Brewer replaced McLeod as the fourth partner.
 
 
 10
 In 1990, the county ASCS office selected B & M Farms for a discretionary year-end review, which raised certain eligibility questions. In response to an ASCS inquiry as to how Jo Ann Brewer acquired Michael McLeod's 25 percent interest in the partnership, the Brewers provided the ASCS review committee with a copy of a check to McLeod for $9,000. However, this money was in fact payment for 12 head of cattle.
 
 
 11
 A series of ASCS rulings and appeals regarding B & M Farms' eligibility followed the 1990 review. A state ASCS committee determined that B & M Farms should refund the government $137,888 in excess payments for crop year 1990. In a letter to the Brewers of December 20, 1991, the committee noted that it did not consider partners paid with "wages" to be making "contributions" of labor.
 
 
 12
 Shortly thereafter, Jo Ann Brewer took the biweekly B & M Farms checks written to McLeod and MacLeod marked "wages" or "labor," used correction fluid to "white out" those entries on the memo line of the checks, and replaced the deleted words with "draw."
 
 
 13
 Because of the crop year 1990 issues, the local ASCS committee automatically audited B & M Farms for crop year 1991. In March 1992, the Brewers submitted photocopies of the altered checks to the local ASCS committee. The ASCS then approved B & M Farms' eligibility status for 1991 payments. Meanwhile, the Brewers continued to appeal the refund for crop year 1990. B & M Farms received farm payments based on increased eligibility for crop year 1992. However, an investigation by the Office of the Inspector General, which led to this prosecution, resulted in a denial of most payments for crop year 1993.
 
 
 14
 The government charged that defendants committed one count of mail fraud under 18 U.S.C. § 1341 by causing the mails to be used in a fraudulent acquisition of federal farm subsidies through a fictitious partnership. The government also charged defendants with two counts of federal program fraud under 18 U.S.C. § 1001 for (1) their representations of a fictitious partnership on the annual payment limitation forms, and (2) their submission of the altered checks.
 
 
 15
 At trial, evidence questioning the authenticity of the partnership focused on two of the B & M Farms partners, John MacLeod and Michael McLeod. Their testimony and that of McLeod's wife, Janice, established that: (1) they contributed no land or money (besides the $1) to the partnership; (2) they had no access to the partnership checking account; (3) they never received an accounting nor attended partnership meetings; (4) Kevin Brewer made the decisions himself as to how the partnership would pay the Brewers for the lease of land and equipment; (5) they never pledged their assets for the loans to B & M Farms, nor took part in the negotiations for these loans; (6) their responsibilities did not significantly increase as "partners"; and (7) they continued to receive the same compensation as "partners" as they had before as employees, although the salary increased over the years.
 
 
 16
 The jury convicted all defendants on all three counts. The district judge ordered restitution in the amount of $176,172 as a joint and several obligation of the co-defendants.[2] B & M Farms was sentenced to a term of five years probation, Jo Ann Brewer to a term of ten months home detention with electronic monitoring and three years probation, and Kevin F. Brewer to a 15-month term of imprisonment, followed by two years of supervised release. The court also fined B & M Farms $2,800, Jo Ann Brewer $90,000, and Kevin F. Brewer $250,000.
 
 DISCUSSION
 I. Guilt Issues
 
 17
 A. Sufficiency of the evidence under 18 U.S.C. § 1341
 
 
 18
 Defendants contend the evidence at trial was insufficient for the jury to convict them of mail fraud.[3] There is sufficient evidence to support a conviction if, viewing the evidence in the light most favorable to the government, a rational trier of fact could find all elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); United States v. Vgeri, 51 F.3d 876, 879 (9th Cir.1995).
 
 
 19
 Defendants annually represented on ASCS payment limitation forms that B & M Farms was a partnership of equal interests. The evidence easily allowed the jury to infer that defendants made these representations with an intent to increase their eligibility for farm subsidies past the $50,000 limit. In fact, they succeeded in doing so for several years. A jury could find beyond a reasonable doubt from the testimony of John MacLeod, Michael McLeod, and Janice McLeod that B & M Farms has never been an equal partnership, or a partnership at all under Montana law.[4]
 
 
 20
 More importantly, a jury could also find beyond a reasonable doubt that defendants knew the reality of their business relationship failed the legal test for a partnership. Their representations that each partner's interest was equal was a blatant and knowing falsehood. This falsehood belies their argument to the jury that B & M Farms was a good-faith attempt to create a partnership, albeit of unequal interests. The falsehood instead implies that the entire B & M Farms venture was an exercise in fiction from the outset.
 
 
 21
 A jury could therefore conclude beyond a reasonable doubt that defendants knowingly maintained a fictitious partnership to defraud the government of farm subsidies, and that in doing so defendants caused the mails to be used.[5]
 
 
 22
 B. Sufficiency of the evidence under 18 U.S.C. § 1001
 
 
 23
 Defendants contend the evidence at trial was insufficient for a jury to convict them on two counts of federal program fraud.[6]
 
 
 24
 The first count of federal program fraud relates to the payment limitation forms submitted by defendants. Defendants represented on forms submitted to the ASCS that B & M Farms was an equal partnership, and this representation was false. Defendants knew these statements were false. Defendants made the statements knowingly and willfully on a subsidies application form signed by all the "partners." The statements were material to the ASCS's decision, because they related directly to B & M Farms' eligibility for subsidies exceeding the $50,000 limit.
 
 
 25
 The second count of federal program fraud arises from the doctored checks submitted to the local ASCS committee for the 1991 year-end review. As discussed, a jury could find beyond a reasonable doubt that B & M Farms was a fictitious partnership and defendants knew it. The modified checks would then be knowing misrepresentations of the nature of the employees' compensation. A jury could find beyond a reasonable doubt that defendants willfully submitted the falsified checks to achieve a favorable (but illegal) result if the ASCS audited B & M Farms again.
 
 
 26
 The evidence was therefore sufficient for a jury to convict defendants on both counts of federal program fraud.
 
 
 27
 C. Denial of defendants' offered jury instruction
 
 
 28
 Defendants contend that the district court's refusal to instruct the jury with an offered instruction was reversible error. Defendants' offered instruction had two parts: (1) that the government had the burden of proving that B & M Farms was a fictitious partnership beyond a reasonable doubt, and (2) that good faith is a sufficient defense to conviction.
 
 
 29
 We review de novo whether the district court's instruction adequately presented the defendant's theory of the case. United States v. Duran, 59 F.3d 938, 941 (9th Cir.), cert. denied, 116 S.Ct. 525 (1995). If the district court's instructions fairly and adequately cover the elements of the offense, the panel reviews the instruction's precise formulation for an abuse of discretion. United States v. Woodley, 9 F.3d 774, 780 (9th Cir.1993). A good faith instruction is unnecessary where the court has already adequately instructed the jury as to specific intent. Duran, 59 F.3d at 941.
 
 
 30
 Here, the district court instructed that the government must prove beyond a reasonable doubt the element of falsity of the defendants' representations. This instruction fairly and adequately conveyed that the government had to prove beyond a reasonable doubt that the partnership was fictitious. Moreover, the district court's instruction on specific intent obviated the need for further instruction on the good faith defense.
 
 
 31
 The district court properly instructed the jury in this case.
 
 
 32
 D. Denial of motion to communicate with alternate juror
 
 
 33
 Defendants contend the district judge erred in denying their motion to communicate with a dismissed alternate juror about allegations of juror misconduct.
 
 
 34
 We are unable to find a case directly on point for a standard of review for this motion. However, we review a denial of a motion for an evidentiary hearing regarding allegations of jury misconduct for abuse of discretion. United States v. Navarro-Garcia, 926 F.2d 818, 822 (9th Cir.1991). "Unless the court is able to determine without a hearing that the allegations are without credibility or that the allegations if true would not warrant a new trial, an evidentiary hearing must be held." Id.
 
 
 35
 Here, the misconduct alleged is that jurors had already determined defendants' guilt before the judge submitted the case to them for deliberations.[7] However, the allegation made to the district court was fifth-hand hearsay. Thus, the allegation was so attenuated and lacking in credibility that the district court did not abuse its discretion in denying the motion.
 
 II. Sentencing Issues
 
 36
 We review de novo the district court's interpretation and application of the guidelines. United States v. Basinger, 60 F.3d 1400, 1409 (9th Cir.1995). The district court's factual findings underlying its application of the guidelines are reviewed for clear error. Id.
 
 
 37
 A. Calculation of "loss"
 
 
 38
 Both defendants and the government assign error to the district court's determination of loss pursuant to U.S.S.G. § 2F1.1.
 
 
 39
 The district court's method for calculating loss appears to have: (1) totalled the payments B & M Farms received for each of the years 1990, 1991, and 1992 in which a defendant participated;[8] (2) then applied deductions of $50,000 per program per year of Kevin Brewer's and Jo Ann Brewer's participation, thus subtracting what the Brewers would have been eligible to receive in the absence of a partnership; and (3) then given B & M Farms another deduction for $137,888 repaid to the government for crop year 1990.
 
 
 40
 The district court determined the loss from Jo Ann Brewer's part in the scheme to be $150,050, from B & M Farms' to be $176,172, and from Kevin Brewer's to be $314,061. Defendants contend the loss from each defendant was zero. The government contends the loss from each defendant was far greater than determined. The parties differ over three subissues.
 
 1. Crop years 1990 and 1993
 
 41
 The district court utilized the years 1990, 1991, and 1992 for calculation of loss. Defendants argue the appropriate years are 1991, 1992, and 1993, because 1990 falls outside the period used in the indictment. The government argues the appropriate years are 1990, 1991, 1992, and 1993, because these years encompass intended losses and related, albeit uncharged, losses that the guidelines expressly include.
 
 
 42
 The calculation of loss under the guidelines is not limited to the conduct charged in the indictment, and encompasses "all acts and omissions ... that were part of the same course of conduct or common scheme or plan as the offense of conviction." United States v. Scarano, 975 F.2d 580, 584 (9th Cir.1992) (quoting U.S.S.G. § 1B1.3(a)(2)). Calculation of loss is not limited to actual loss, and includes all intended loss the defendant attempted to inflict. United States v. Joetzki, 952 F.2d 1090, 1096 (9th Cir.1991); U.S.S.G. § 2F1.1 Application Note 7.
 
 
 43
 In 1990, B & M Farms applied for and received farm subsidies based on the fraudulently-inflated eligibility. We find the district court correctly included conduct from 1990 as part of the same scheme as charged in the indictment. In 1993, B & M Farms applied for excess subsidies, but received none. We find the district court clearly erred in omitting from its calculation the intended loss from conduct in 1993.
 
 2. Credit for repayment of $137,888
 
 44
 The district court appears, inexplicably, to have given B & M Farms, but not Kevin Brewer, $137,888 credit for the repayment to the government for crop year 1990. Defendants claim they are entitled to this credit in the loss calculation.
 
 
 45
 No such credit should be given to any defendant in this case, because defendants intended to inflict the loss of the refunded money. See Joetzki, 952 F.2d at 1096. Only the ASCS's discretionary review process prevented them from doing so.
 
 
 46
 3. Deduction for Steven Brewer's eligibility
 
 
 47
 Defendants seek an additional annual $50,000 per-program deduction from the calculation of loss based on the partnership eligibility of Steven Brewer.
 
 
 48
 At a pre-sentencing hearing, Steven Brewer and a local ASCS official gave testimony on Steven's eligibility for farm subsidies in his own right prior to becoming a "partner" of B & M Farms in 1986. With a $100,000 bank note secured by his father, Steven had leased land and equipment for farming and had received farm subsidies with his own annual $50,000 limit. After 1986, Steven subleased this land to B & M Farms and stopped receiving subsidy payments in his own right. The ASCS official testified Steven was not actually eligible for the pre-1986 payments he received, because of the nature of his borrowed capital and leased land. The ASCS official also stated B & M Farms had in fact paid Steven wages (and not draws) for his farm labor, consistent with those paid to John MacLeod and Michael McLeod. Consequently, the official concluded Steven's contributions to B & M Farms were insufficient to create increased eligibility for farm subsidies.
 
 
 49
 Given this evidence, the district court's denial of additional deductions based on Steven's participation was not clearly erroneous.
 
 
 50
 B. Assessment for "more than minimal planning"
 
 
 51
 On cross-appeal, the government contends that the district court's finding that defendants had not engaged in "more than minimal planning" was clearly erroneous. "More than minimal planning" results in a two-level enhancement in crimes of fraud. U.S.S.G. § 2F1.1(b)(2). The term is clearly defined in the guidelines:
 
 
 52
 "More than minimal planning" means more planning than is typical for commission of the offense in a simple form. "More than minimal planning" also exists if significant affirmative steps were taken to conceal the offense.... "More than minimal planning" is deemed present in any case involving repeated acts over a period of time, unless it is clear that each instance was purely opportune. Consequently, this adjustment will apply especially frequently in property offenses.
 
 
 53
 U.S.S.G. § 1B1.1 Application Note 1(f). Citing this comment, appellate courts have reversed trial court findings of no "more than minimal planning" as clearly erroneous where fraudulent acts occurred repeatedly over an extended period of time. See United States v. Monaco, 23 F.3d 793, 796-98 (3rd Cir.1994); United States v. Ivery, 999 F.2d 1043, 1046 (6th Cir.1993); United States v. Rust, 976 F.2d 55, 57 (1st Cir.1992).
 
 
 54
 More than minimal planning enhancements are appropriate where defendants create phony business entities to perpetrate their fraud, see Ivery, 999 F.2d at 1046, where false business documents are created and uttered, see United States v. Donine, 985 F.2d 463, 467 (9th Cir.1993), where sophisticated financial arrangements are used, see United States v. Ford, 989 F.2d 347, 351 (9th Cir.1993), and where defendants enlist accomplices. See United States v. Woody, 55 F.3d 1257, 1274 (7th Cir.), cert. denied, 116 S.Ct. 234 (1995).
 
 
 55
 Here, the evidence demonstrates that Kevin Brewer created a fictitious business entity in 1986 by way of a bogus partnership agreement and enlisted as accomplices his sons, wife, and two employees. Together, Jo Ann and Kevin Brewer annually submitted false documents to the ASCS, used lease agreements to funnel back fraudulently-acquired funds, and falsified checks in furtherance of their fraud (and also to conceal it). This conduct persisted over a period of years.
 
 
 56
 The district court clearly erred in not finding more than minimal planning.
 
 
 57
 C. Downward adjustment for Jo Ann Brewer's minor role
 
 
 58
 Jo Ann Brewer contends that the district court clearly erred in denying her a two-level downward adjustment for minor participant status under U.S.S.G. § 3B1.2(b).
 
 
 59
 To merit a reduction in offense level as a minor participant, a defendant should be one who is less culpable than most other participants, but whose role could not be described as minimal. United States v. Benitez, 34 F.3d 1489, 1497 (9th Cir.1994), cert. denied, 115 S.Ct. 1268 (1995). The defendant must be substantially less culpable than her average coparticipant. Id. at 1497-98.
 
 
 60
 In arguing the district court here committed clear error, Jo Ann Brewer relies on the findings the district court made in departing down one level because of her "following role" in the scheme. The district court stated at a sentencing hearing:
 
 
 61
 I have departed downward based on the fact I do not hold her to the same accountability that I hold the partnership and Kevin Brewer; that she joined the partnership late ... and I do not put her in the planning of the partnership to that extent.
 
 
 62
 In the sentencing order, the district court elaborated:
 
 
 63
 In this particular case, it appears the guideline range overestimates the seriousness of the offense when weighed against government procedures and the actual conduct of this defendant. First of all, the defendant has demonstrated her primary role at B & M Farms was to pay all the bills, order supplies, take care of various money matters and other miscellaneous work. She did submit to ASCS that she was a bonafide member of the alleged partnership. Nevertheless, she did not generate at the beginning of the partnership planning. She followed the plan as agreed by the partners as a full participant in the offense conduct, but did not provide the genesis for the overall plan or activity.... In essence, she played more of a "following role" than a dynamic brainstorming participant.
 
 
 64
 Judgment of April 6, 1995.
 
 
 65
 Strictly speaking, the district court's observations do not amount to a finding that Jo Ann was a "minor participant." Furthermore, the facts of the case make such an interpretation implausible. While less involved in the fraud than her husband, Jo Ann was much more involved than her two sons and the two farm employees who joined as "partners." From the beginning, Jo Ann effected the transactions that funnelled the profits from B & M Farms to her and her husband. Jo Ann altered the employee paychecks. Jo Ann bought a 25 percent interest in B & M Farms from Michael McLeod for $1, and then showed the ASCS a $9,000 check from the purchase of McLeod's cows to fake a substantial investment in that 25 percent interest. Jo Ann benefited from the fraud to an extent MacLeod and McLeod never did.
 
 
 66
 The district court did not commit clear error in denying Jo Ann Brewer minor-participant status.
 
 
 67
 D. Downward departure of one level for Jo Ann Brewer
 
 
 68
 On cross-appeal, the government contends the district court improperly departed downward from the adjusted guideline level in sentencing Jo Ann Brewer.
 
 
 69
 Our review of guideline departures follows the three-part procedure established in United States v. Lira-Barraza, 941 F.2d 745, 746-47 (9th Cir.1991) (en banc). We review: (1) whether the trial court had the legal authority to depart, de novo; (2) the factual findings in support of the basis for departure, for clear error; and (3) the "reasonableness" of the extent of departure in light of the structure, standards, and policies of the guidelines. Id. A trial court must explain the reasoning for departure in language sufficiently specific to allow meaningful review. Id. at 751.
 
 
 70
 Here, the district court did not use the minor-participant mechanism as the legal basis for departure, but rather U.S.S.G. § 5K2, which permits discretionary departure if a court finds unusual mitigating circumstances of a kind or to a degree not adequately taken into consideration by the Sentencing Commission. Jo Ann Brewer suggests an additional basis in § 2F1.1 Application Note 10(f), which allows downward departure in extraordinary cases where the calculation of loss overstates the seriousness of the offense. The loopholes of §§ 2F1.1 and 5K2 are purposely open-ended, factually.
 
 
 71
 Here, the district court gave a lengthy explanation of its reasons for departing downward, i.e., the unique role Jo Ann Brewer had in the fraud generated by her husband. None of the cases the government cites squarely negates the applicability of §§ 2F1.1 and 5K2 to these facts.[9] By basing the departure on the "following role" Jo Ann Brewer played, the district court may have bent the guidelines, but did not clearly break them. The district court's factual findings that Jo Ann Brewer played a less culpable, "following" role are not clearly erroneous. Finally, a one-level departure is minimal and therefore reasonable.
 
 
 72
 We affirm the downward departure.
 
 E. Fines imposed
 
 73
 Defendants Kevin Brewer and Jo Ann Brewer contend the district court erred in imposing fines exceeding the limits set out in the fine table at U.S.S.G. § 5E1.2.
 
 
 74
 The district court must already recalculate defendants' guideline offense levels based upon our conclusions regarding calculation of loss and more-than-minimal planning. The fine ranges set out in § 5E1.2 are based on adjusted offense level. Therefore, we vacate defendants' fines and leave for the district court on remand the proper application of the Federal Sentencing Guidelines' fine provisions.
 
 CONCLUSION
 
 75
 We affirm defendants' convictions, but vacate their sentences and remand these cases to the district court for resentencing consistent with our conclusions regarding determination of loss, more than minimal planning, and fines.
 
 
 76
 AFFIRMED in part; REVERSED in part and REMANDED.
 
 
 
 *
 The Honorable Robert E. Jones, United States District Judge, District of Oregon, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 In 1991, spouses of participating farmers became eligible for an additional maximum of $50,000 per program
 
 
 [2]
 Jo Ann Brewer's joint and several restitution obligation with her codefendants is $150,050
 
 
 [3]
 The elements of mail fraud are: (1) defendant was part of a scheme or plan for obtaining money or property by making false promises or statements; (2) defendant knew the promises or statements were false when made; (3) the promises or statements were of a kind that would reasonably influence a person to part with money or property; (4) the defendant acted with the intent to defraud; and (5) defendant used or caused to be used the mail to carry out or attempt to carry out the scheme. See 18 U.S.C. § 1341
 
 
 [4]
 In order for Montana law to recognize a partnership, the parties must intend to associate themselves as partners. Tondu v. Akerley, 855 P.2d 116, 196-97 (Mont.1993). There must exist: (1) some contribution of each co-adventurer or partner of something promotive of the enterprise; (2) joint proprietary interest and a right of mutual control over the subject matter of the enterprise or over the property engaged therein; and (3) agreement to share the profits. Id. The intent to form a partnership must be clearly manifested as ascertained from all the facts, circumstances, and conduct of the parties. Id
 
 
 [5]
 Trial testimony proved that the ASCS mailed the farm program checks to recipients. With no evidence to the contrary, the jury could reasonably assume the ASCS had followed its usual practice
 
 
 [6]
 The elements of federal program fraud are: (1) defendant made a false statement to a government agency; (2) defendant knew the statement was false when made; (3) defendant acted knowingly and willfully; and (4) the statements were material to the government agency's activities or decisions. See 18 U.S.C. § 1001
 
 
 [7]
 If true, the jury's premature discussion of the case would warrant a determination "whether or not the misconduct has prejudiced the defendant to the extent that he has not received a fair trial." United States v. Klee, 494 F.2d 394, 396 (9th Cir.), cert. denied, 419 U.S. 835 (1974)
 
 
 [8]
 The district court only used 1991 and 1992 for Jo Ann Brewer, because it found she joined the partnership in 1991. In its brief on cross-appeal, the government failed to assign error to this specific decision. The government therefore waived the objection it made to this decision at oral argument
 
 
 [9]
 The government cites United States v. Schein, 31 F.3d 135 (3rd Cir.1994), which reversed the district court's downward departure based on its conclusory observation that the sentence required by the guidelines overstated the seriousness of the offense committed by the defendant in that case. See id. at 138