**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jack Curtis COMER, Defendant–
Appellant.**

No. 95–5884.

United States Court of Appeals,
Sixth Circuit.

Argued March 26, 1996.

Decided Aug. 23, 1996.

Thomas L. Parker, Asst. U.S. Attorney (argued and briefed), Memphis, TN, for Plaintiff-Appellee.

Kathryn M. Swisher (argued and briefed), Memphis, TN, for Defendant-Appellant.

Before: KENNEDY and MOORE, Circuit Judges; WELLS, District Judge.[*]

MOORE, Circuit Judge.

Between September 1993 and March 1994, Appellant Jack Curtis Comer, who was employed by the U.S. Postal Service as a supervisor at the Memphis Bulk Mail Center ("MBMC"), repeatedly stole articles of mail from registered parcels that were mistakenly delivered to the MBMC rather than to the Memphis General Mail Facility. Comer stole jewelry from several parcels, and in July 1994, he stole five $5,000 bearer bonds from a registered parcel. After taking the bonds, Comer solicited the assistance of co-defendant James Hillman to redeem them.

Comer was charged in a seven-count indictment. Counts One through Four charged him with unlawfully and willfully embezzling articles from registered mail pouches in violation of 18 U.S.C. § 1709. Count Five charged Comer and Hillman with the knowing and unlawful possession of five bonds which had been stolen from the mail, and with aiding and abetting the same, in violation of 18 U.S.C. § 1708 and § 2. Counts Six and Seven charged Comer and Hillman with unlawfully transporting stolen securities and money, and aiding and abetting the same, under 18 U.S.C. § 2314 and § 2. The jury convicted Comer of all counts except Count Two.

Comer appeals several aspects of his conviction and sentence. He challenges the sufficiency of the evidence and the admission under Federal Rule of Evidence 404(b) of testimony regarding uncharged sales of jewelry at the MBMC at or near the time of the indicted conduct. With respect to his sentence, Comer contends that the district court erred by imposing a restitution order based in part on uncharged conduct and charges of which he was acquitted. He also argues that the district court violated the ERISA anti-alienation provision, ERISA § 206(d), 29 U.S.C. § 1056(d), by ordering him to apply for his pension benefits to satisfy the restitution order. Finally, Comer claims that the district court erred by including uncharged and acquitted conduct in determining the amount of the loss and by imposing enhancements under the Sentencing Guidelines for more than minimal planning and obstruction of justice.

We vacate Comer's sentence and remand for resentencing because the district court erred in determining the amount of the loss and by imposing a restitution order based in part on uncharged conduct and charges of which the defendant was acquitted. *See Hughey v. United States,* 495 U.S. 411, 420, 110 S.Ct. 1979, 1984–85, 109 L.Ed.2d 408 (1990).[1]

---

[*] The Honorable Lesley Brooks Wells, United States District Judge for the Northern District of Ohio, sitting by designation.

1. We note that shortly after the Supreme Court decided *Hughey,* the Victim Witness Protection Act, 18 U.S.C. §§ 3663–3664, was amended. For example, we have recognized that as part of the Crime Control Act of 1990, Congress amended certain provisions of the VWPA, including the definition of "victim":

 For the purposes of restitution, a victim of an offense that involves as an element a scheme, a conspiracy, or a pattern of criminal activity means any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.

18 U.S.C. § 3663(a)(2). *See United States v. Jewett,* 978 F.2d 248, 252 (6th Cir.1992). The *Jewett* court stated that this amendment "expands the definition of a 'victim' in cases such as mail fraud...." *Id.* Jewett had pleaded guilty to two counts of mail fraud and aiding and abetting under 18 U.S.C. §§ 1341 and 2, committed in the course of a bid-rigging scheme. *Id.* at 249. In contrast, Comer was charged, in pertinent part, with violations of 18 U.S.C. §§ 1709, 1708, and 2 and was not charged with any crime that required proof of a scheme, conspiracy, or pattern of criminal activity. *See also United States v. Guardino,* 972 F.2d 682, 687 (6th Cir.1992) (describing amendment to VWPA allowing the court to order restitution to the extent that the parties have agreed to restitution in a plea agreement). These amendments are irrelevant here.

In addition, the Mandatory Victims Restitution Act of 1996 ("MVRA"), which was enacted on April 24, 1996 as Title II, Subtitle A of the Antiterrorism and Effective Death Penalty Act of 1996, P.L. 104–132, 110 Stat. 1214, does not apply in this case because Title II provides that "[t]he amendments made by [subtitle A] shall, to the extent constitutionally permissible, be effec-

However, we affirm Comer's conviction and sentence in all other respects.

## I. SUFFICIENCY OF THE EVIDENCE

■ Comer argues that the evidence presented at trial was insufficient to sustain his convictions on Count One and Counts Three through Seven of the indictment. The standard of review for claims of insufficient evidence is " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *United States v. Evans*, 883 F.2d 496, 501 (6th Cir. 1989) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original)). Moreover, we defer to the fact finder on issues of credibility. *See United States v. Ashworth*, 836 F.2d 260, 266 (6th Cir.1988) ("The court of appeals ... does not sit as a 'thirteenth juror' to judge the credibility of witnesses [nor] do we reweigh the evidence.").

■ Comer challenges the sufficiency of the evidence relating to Counts One, Three, and Four because there was no proof that anyone actually saw the defendant with particular stolen parcels of mail. However, the government need not prove the elements of an offense by direct evidence; circumstantial evidence is equally valid. *See Holland v. United States*, 348 U.S. 121, 140, 75 S.Ct. 127, 137–38, 99 L.Ed. 150 (1954); *United States v. Ingrao*, 844 F.2d 314, 315 (6th Cir. 1988). Several witnesses testified about purchasing jewelry from the defendant and/or pawning transactions involving jewelry shown to be stolen from the mail. Counts One and Three charged Comer with violations of 18 U.S.C. § 1709, which subjects to criminal penalties any "Postal Service officer or employee" who

> embezzles any letter, postal card, package, bag, or mail, or any article or thing contained therein entrusted to him or which comes into his possession intended to be conveyed by mail, or carried or delivered by any carrier, messenger, agent, or other

person employed in any department of the Postal Service, or forwarded through or delivered from any post office or station thereof established by authority of the Postmaster General or of the Postal Service; or steals, abstracts, or removes from any such letter, package, bag, or mail, any article or thing contained therein....

18 U.S.C. § 1709.

With respect to Count One, Benita Tate, who worked with Comer at the MBMC, purchased a necklace with a lion pendant and some miscellaneous rings from Comer. J.A. at 503–06. Postal patron Grace McShan identified the lion necklace as having been included in a registered mail package she sent from a post office in Greenwood, Mississippi on December 31, 1993, which never reached its destination. J.A. at 412–14. The date of McShan's mailing and the receipt numbers of the registered mail packages (R642125995 and R642125996) correspond with the charge in Count One. J.A. at 11, 483–84. As to Count Three, Janice Lyles, who also worked at the MBMC, purchased a heart-shaped pendant from Comer. J.A. at 378–79. This item was identified by postal patron Vincent Miles of EZ Central Jewelry Processing as an article sent by registered mail on February 4, 1994 from Austin, Texas to William Boiko of EZ Pawn in Memphis, Tennessee, but never delivered. J.A. at 198–200, 424–26. The mailing date for this item corresponds with Count Three, charging Comer with stealing from a registered mail pouch "on or about February 6, 1994." J.A. at 13. Thus, the government presented sufficient evidence linking Comer to the theft of the registered mail packages referred to in Counts One and Three.

Counts Four through Seven involved the stealing, possession, and redemption of the bearer bonds Comer stole from a registered mail package. With respect to Count Four, which charged Comer with violating 18 U.S.C. § 1709, Betty Ledet testified that she took five bearer bonds worth $5,000 each to be mailed by Premier Bank in Louisiana on

tive for sentencing proceedings in cases in which the defendant is convicted on or after the date of enactment of this Act." Section 211, 110 Stat.

1214, 1241, 18 U.S.C. § 2248. Accordingly, statutory citations in this opinion refer to the provisions in effect before the passage of the MVRA.

July 27, 1994. J.A. at 375–77. Charlotte Townsend from Premier Bank testified that she had the bonds mailed on July 27, 1994 by registered mail, receipt number R650857279, which corresponds to the receipt number identified in Count Four. J.A. at 14, 515–16.

 Count Five charged Comer and Hillman with possession of articles stolen from the mail, in violation of 18 U.S.C. §§ 1708[2] and 2.[3] J.A. at 15. Comer argues that there was insufficient evidence on Count Five because the government did not prove that he knew the bonds were stolen *from the mail.* This argument must fail. To prove possession of stolen mail under 18 U.S.C. § 1708, the government must prove that: (1) "the defendant possessed material stolen from the mail;" (2) "knowing same to be stolen;" (3) "with intent to possess the material unlawfully." *United States v. Sanders,* 639 F.2d 268, 270 (5th Cir.1981). *See also United States v. Daughtry,* 639 F.2d 818, 821 (D.C.Cir.1981) ("The crime of possession of stolen mail under section 1708 requires proof that the checks had been stolen from the mail, that the accused intended to possess the checks, and that the accused knew the checks were stolen."); *United States v. Makres,* 598 F.2d 1072, 1079 (7th Cir.1979) (same). There is no requirement that the government show that the defendant knew that the items were stolen from the mail; rather, the government need only show that the defendant knew the items were stolen. *Barnes v. United States,* 412 U.S. 837, 847, 93 S.Ct. 2357, 2363–64, 37 L.Ed.2d 380 (1973) (stating that the legislative history for the 1939 amendment to the statute precluding possession of stolen mail "conclusively refutes" the argument that the government

must prove specifically that the defendant knew the property was stolen from the mail). Moreover, the circumstantial evidence showed that Comer must have known that the items were stolen from the mail because he stole the bonds himself. *See id.* at 845–46, 93 S.Ct. at 2362–63 (holding that a jury may infer the existence of knowledge from the defendant's unexplained possession of recently stolen mail where there was no plausible explanation for possession that was consistent with innocence).

 Counts Six and Seven charged Comer and Hillman with transporting stolen bonds and transporting a stolen check in interstate commerce, respectively, both in violation of 18 U.S.C. §§ 2314[4] and 2. J.A. at 16–17. The government presented sufficient evidence on Counts Six and Seven: Hillman testified that Comer supplied the bonds to him and that, at Comer's request, Hillman brought the bonds to The Commercial National Bank in Jackson, Mississippi to redeem them. In exchange, Comer offered to pay Hillman $5,000 plus the taxes owed on the total value of the bonds. J.A. at 313–19. Comer gave several different explanations for his possession of the bonds. At trial, he testified that he found them lying next to his truck at an Amoco station. J.A. at 217–18. Hillman testified that Comer told him that a bookie who owed Comer money had given him the bonds. J.A. at 315. Comer told Hillman that if anyone asked where he got the bonds, he should say that he found them. J.A. at 318. After redeeming the bonds, Hillman returned to Tennessee with a check in the amount of $25,000. J.A. at 211.

2. Section 1708 reads as follows:
 Whoever steals, takes, or abstracts, or by fraud or deception obtains, or attempts so to obtain, from or out of any mail, post office, or station thereof, letter box, mail receptacle, or any mail route or other authorized depository for mail matter, or from a letter or mail carrier, any letter, postal card, package, bag, or mail, or abstracts or removes from any such letter, package, bag, or mail, any article or thing contained therein, or secretes, embezzles, or destroys any such letter, postal card, package, bag, or mail, or any article or thing contained therein; ... [shall be subject to criminal penalties].

3. Section 2 provides that "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."

4. Section 2314 provides that:
 Whoever transports, transmits, or transfers in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud; ... Shall be [subject to criminal penalties].

Thus, the government presented sufficient evidence to prove the essential elements of each of the crimes of which the jury convicted Comer.

## II. OTHER ACTS EVIDENCE UNDER FEDERAL EVIDENCE RULE 404(b)

Comer argues that the district court erred by admitting testimony about Comer's sales of jewelry at the MBMC between September 1993 and May 1994 that were not charged in the indictment. Comer asserts that the admission of this testimony violated Federal Rules of Evidence 404(b) and 403 because none of the items that the witnesses purchased had been identified as having been sent through the mail or claimed by anyone as having been stolen. *See* Motion in Limine, J.A. at 70–72.

█ Reviewing the admission of Rule 404(b) evidence involves a three-step analysis. *United States v. Gessa,* 971 F.2d 1257, 1261–62 (6th Cir.1992) (en banc). First, we review for clear error the district court's factual determination that sufficient evidence exists that the other acts occurred. *Id.* Second, we review de novo whether the district court correctly determined that the evidence was admissible for a legitimate purpose. *Id.* Third, we review for abuse of discretion the district court's determination that the "other acts" evidence is more probative than prejudicial under Rule 403. *Id.* at 1262.

█ Because Comer challenges the purpose for which the district court admitted evidence of uncharged jewelry sales, our review is de novo. We hold that the district court correctly found that the testimony was admissible under Rule 404(b) because it was offered for the limited purpose of proving that the defendant had an economic motive to steal the jewelry. The district court instructed the jury as to this limited purpose:

> You have heard testimony that the defendant committed some acts other than the ones charged in the indictment. Specifically, you have heard testimony ... that the defendant improperly sold jewelry on postal property.
>
> You cannot consider this testimony as evidence that the defendant committed the crimes that he is on trial for now. Instead, you can only consider it in deciding whether the defendant had a present economic motive for acquiring money at the time the defendant allegedly committed the crimes as charged in the indictment. You can also consider the testimony that the defendant committed some acts other than the ones charged in the indictment in deciding whether the defendant had knowledge that the mail had been stolen. Do not consider that testimony for any other purposes.

J.A. at 614–15. Thus, the evidence regarding uncharged jewelry sales showed that Comer had a motive to steal jewelry from the mail because he had a ready market for the jewelry at the MBMC.[5]

Alternatively, the government argues that the testimony about which Comer complains is not Rule 404(b) evidence because it involved sales of stolen jewelry over a period of several months, including the time-frame alleged in the indictment. *See United States v. Barnes,* 49 F.3d 1144, 1149 (6th Cir.1995) (holding that evidence of a prior drug delivery was intrinsic to the drug transaction charged in the indictment); *United States v. DeClue,* 899 F.2d 1465, 1472 (6th Cir.1990) ("Evidence which is probative of the crime charged and does not solely concern un-

---

5. To the extent Comer argues that the testimony should not have been admitted under Rule 403 because "its probative value [was] substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence," Fed.R.Evid. 403, he faces an uphill battle. This court reviews the disputed evidence in "the light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect." *United States v. Bonds,* 12 F.3d 540, 567 (6th Cir.1993) (citation omitted).

"Unfair prejudice does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest decision on an improper basis." *Id.* (citation and internal quotation omitted). A "district court has broad discretion in balancing probative value against potential prejudicial impact." *United States v. Feinman,* 930 F.2d 495, 499 (6th Cir.1991). Since the defendant has not suggested any unfair prejudice that resulted from admission of the disputed evidence, we hold that the district court did not abuse its discretion under Rule 403.

charged crimes is not 'other crimes' evidence."). Because the proof showed that the defendant operated an ongoing scheme of stealing items of jewelry from the mail and selling them to employees of the postal service, the contested testimony is directly related to the crime charged. This provides an alternative ground for the admissibility of the testimony regarding uncharged jewelry sales.

## III. SENTENCING ISSUES

 When reviewing sentencing decisions, we will disturb the district court's underlying factual findings only if they are clearly erroneous. 18 U.S.C. § 3742(e); *United States v. Hamilton*, 929 F.2d 1126, 1130 (6th Cir.1991). Furthermore, the court of appeals must "give due deference to the district court's application of the guidelines to the facts." 18 U.S.C. § 3742(e). However, "[w]hether the facts found by the district court warrant the application of a particular guideline provision is a legal question and is to be reviewed de novo by the appellate court." *United States v. Partington*, 21 F.3d 714, 717 (6th Cir.1994) (citations omitted).

### A. Amount of Restitution

 The district court ordered restitution in the amount of $142,108.38, which is the amount claimed by the victims. J.A. at 55. The value of the bonds ($25,000) is not included in this amount because a stop payment was put on the check given to Hillman when he redeemed the bonds. J.A. at 25. The amount claimed includes losses in the amount of $97,100.92 relating to the conduct charged in Count Two, of which Comer was acquitted, and more than $10,000 relating to losses from uncharged conduct. J.A. at 42. We review de novo whether a restitution order is permitted under the law. *United States v. Guardino*, 972 F.2d 682, 686 (6th Cir.1992). If it is, "we then review the amount ordered under the abuse of discretion standard." *Id.* (citation omitted).

The district court imposed its restitution order as a condition of supervised release

pursuant to 18 U.S.C. § 3583(d), which permits a sentencing court to order as a "further condition of supervised release, ... any condition set forth as a discretionary condition of probation in section 3563(b)(1) through (b)(10)...." *See* J.A. at 53. In turn, 18 U.S.C. § 3563(b)(3) permits a sentencing court to order a defendant to "make restitution to a victim of the offense under sections 3663 and 3664 (but not subject to the limitations of § 3663(a)) ..." as a discretionary condition of probation.[6] *See Gall v. United States*, 21 F.3d 107, 109–10 (6th Cir.1994). Moreover, section 5E1.1(a) of the Sentencing Guidelines provides that "[t]he court shall ... enter a restitution order if such order is authorized under 18 U.S.C. §§ 3663–3664," the Victim and Witness Protection Act ("VWPA"). Section 3663 provides that "[t]he court, when sentencing a defendant convicted of an offense under [title 18] ... may order, in addition to or, in the case of a misdemeanor, in lieu of any other penalty authorized by law, that the defendant make restitution to any victim of such offense." 18 U.S.C. § 3663(a)(1). Section 3664 provides that "[t]he court, in determining whether to order restitution under section 3663 of [title 18] and the amount of such restitution, shall consider the amount of the loss sustained by any victim as a result of the offense...." 18 U.S.C. § 3664(a).

 The Supreme Court has held that under the VWPA, "the loss caused by the conduct underlying the offense of conviction establishes the outer limits of a restitution order." *Hughey v. United States*, 495 U.S. 411, 420, 110 S.Ct. 1979, 1984, 109 L.Ed.2d 408 (1990). The Court reasoned that the plain language of the VWPA allows restitution for victims of "the offense" and "such offense," referring to the offense of conviction, and that "the ordinary meaning of 'restitution' is restoring someone to a position he occupied before a particular event." *Id.* at 416, 110 S.Ct. at 1982. The Court also based its conclusion on the rule of lenity. *Id.* at 422, 110 S.Ct. at 1985–86. *See also United States v. Tunning*, 69 F.3d 107, 116 (6th

---

**6.** The limitation of section 3663(a) is that the VWPA only applies to offenses violating Title 18 or certain subsections of the Federal Aviation Act of 1958. Since all of the offenses at issue here are Title 18 offenses, this limitation is irrelevant.

Cir.1995) (holding that the district court erred by ordering the defendant to pay restitution representing losses that resulted from conduct that formed the basis of counts that were dismissed); *United States v. Jewett,* 978 F.2d 248, 253 (6th Cir.1992) (a mail fraud case holding, based on *Hughey,* that the district court exceeded its statutory authority by ordering restitution based on all losses caused by the scheme rather than those attributable to the offenses of conviction); *United States v. Kane,* 944 F.2d 1406, 1415 (7th Cir.1991) (holding that "[i]f restitution cannot be ordered for uncharged conduct, it cannot be ordered for conduct with which the defendant is specifically charged and acquitted."). Because the district court erroneously imposed a restitution award based on losses occasioned by conduct that was not charged in the indictment and losses that resulted from a charge of which the defendant was acquitted, we vacate Comer's sentence and remand for resentencing.

**B. Surrender of Comer's Retirement Fund To Satisfy Restitution**

 The district court ordered Comer to "forfeit the full amount of his retirement fund accrued to date to the United States of America, which shall be applied towards the total amount of Restitution imposed; the defendant shall apply for said retirement benefits immediately." Judgment in a Criminal Case, May 31, 1995, J.A. at 57. Comer ar-

gues that the district court erred by ordering that he forfeit his retirement fund to satisfy the court's restitution order because ERISA § 206(d), 29 U.S.C. § 1056(d),[7] prohibits alienation of pension funds.[8] We review this issue only for plain error under Federal Rule of Criminal Procedure 52(b) because Comer's attorney failed to object at the sentencing hearing to the district court's order that Comer surrender his retirement fund to satisfy the restitution order.[9]

We reject Comer's argument regarding the ERISA anti-alienation provision because subchapter I of ERISA, which contains the anti-alienation provision, does not apply to a "governmental plan." 29 U.S.C. § 1003(b)(1). A "governmental plan" is defined as "a plan established or maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing...." 29 U.S.C. § 1002(32). Although a Postal Service employee is generally not considered an employee under Title 5 of the United States Code, 5 U.S.C. § 2105(e),[10] the provisions governing retirement plans for federal employees do apply to Postal Service employees:

> Officers and employees of the Postal Service (other than Governors) shall be covered by chapters 83 and 84 of Title 5. The Postal Service shall withhold from pay and

---

7. The ERISA anti-alienation provision mandates that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d).

8. In support of his argument that the pension fund should not be subject to forfeiture, Comer's counsel initially cited a Tennessee statute providing that vested pension benefits are marital assets. However, as the government points out, the statute states that the "[p]roperty shall be considered marital property as defined by this subsection for the sole purpose of dividing assets upon divorce and for no other purpose...." Tenn.Code Ann. § 36–4–121(b)(1)(D). Therefore, we reject this basis out of hand. Nonetheless, the government cites case law in a footnote in its response brief regarding the inalienability of pension funds under ERISA. Comer's reply brief "adopts" this argument without any further development of the issue.

9. The Presentence Investigation Report ("PSR") does not specifically recommend that any restitu-

tion payment would be paid from Comer's retirement fund. However, it does list under "Financial Condition: Ability to Pay" that "[a]ccording to the United States Postal Inspection Service," Comer "has a retirement amount of $22,832.74." J.A. at 30. Moreover, the district court stated during the sentencing hearing that Comer's retirement benefits should be forfeited. Sentencing Tr. at 38. Comer did not object at that time to the use of Comer's retirement benefits to pay restitution. Furthermore, Comer's attorney did not raise the ERISA issue on appeal until the reply brief, and even then only in a cursory adoption of the government's footnote addressing the issue.

10. Section 2105(e) provides that "[e]xcept as otherwise provided by law, an employee of the United States Postal Service or of the Postal Rate Commission is deemed not an employee for purposes of this title."

shall pay into the Civil Service Retirement and Disability Fund the amounts specified in or determined under such chapter 83 and subchapter II of such chapter 84, respectively.

39 U.S.C. § 1005(d)(1). Since chapters 83 and 84 of Title 5 are provisions governing the retirement system for federal employees, we assume that a Postal Service employee's retirement fund would be treated as a "governmental plan" and therefore excluded from coverage of ERISA § 206(d), the anti-alienation provision. *See also* 29 U.S.C. § 1001(c) (Congressional declaration of ERISA policy "to protect ... the interests of participants in *private* pension plans ...." (emphasis added)).

However, Title 5 also imposes restrictions on alienation of certain retirement funds:

> An amount payable under subchapter II,[11] IV, or V of this chapter is not assignable, either in law or equity, except under the provisions of section 8465 or 8467,[12] or subject to execution, levy, attachment, garnishment or other legal process, *except as may otherwise be provided by Federal laws.*

5 U.S.C. § 8470(a) (emphasis added). *See also* 5 U.S.C. § 8346 (providing a similar anti-alienation provision with respect to funds in Chapter 83, subchapter III, which deals with Civil Service Retirement). Thus, on remand the district court should determine what type of retirement plan Comer has, since that information is not currently available in the record.

Assuming one of the anti-alienation provisions from Chapters 83 and 84 of Title 5 applies, the district court must determine whether its restitution order fits within the exception to the applicable anti-alienation provision. The district court ordered restitution under the Victim Witness Protection Act ("VWPA"), which provides that:

> An order of restitution may be enforced—

(1) by the United States—

> (A) in the manner provided for the collection and payment of fines in subchapter B of chapter 229 of this title; or

> (B) in the same manner as a judgment in a civil action; and

(2) by a victim named in the order to receive the restitution, in the same manner as a judgment in a civil action.

18 U.S.C. § 3663(h). *See also* Fed.R.Civ.P. 69 (describing the "[p]rocess to enforce a judgment for the payment of money" and referring in the Advisory Committee Notes to 5 U.S.C. §§ 8346, 8470 among "[s]pecial statutes of the United States on exemption from execution"). Subchapter B of chapter 229 in Title 18 provides that a fine imposed "is a lien in favor of the United States upon all property belonging to the person fined." 18 U.S.C. § 3613(a). Section 3613(c) states that various sections of the Internal Revenue Code, including 6331 and 6334

> apply to a fine and to the lien imposed by subsection (a) *as if the liability of the person fined were for an internal revenue tax assessment,* except to the extent that the application of such statutes is modified by regulations issued by the Attorney General to accord with differences in the nature of the liabilities.

18 U.S.C. § 3613(c) (emphasis added). Section 6331 sets forth the basic procedures for collection of taxes after notice and demand by authorizing a levy on all of the property of the person liable, except property exempted by § 6334. *See* 26 U.S.C. § 6331. Section 6334(a)(6), which enumerates property exempt from a tax levy, provides:

> (a) There shall be exempt from levy—

> ⋅ ⋅ ⋅ ⋅ ⋅

> (6) Certain annuity and pension payments.—Annuity or pension payments under the Railroad Retirement Act, benefits

---

**11.** Subchapter II of Chapter 84 covers the basic annuity. To the extent Comer participated in a Thrift Savings Plan under Subchapter III, however, this provision would not apply.

**12.** Neither of these sections are relevant here. Section 8465 gives the annuity recipient the discretion to decline all or any part of the amount of

the annuity and the authority to assign amounts from the annuity with the Office of Personnel Management approval. Section 8467 provides for payment of an employee's annuity to a person other than the employee in the contexts of divorce, annulment, legal separation, or child abuse.

under the Railroad Unemployment Insurance Act, special pension payments received by a person whose name has been entered on the Army, Navy, Air Force, and Coast Guard Medal of Honor roll (38 U.S.C. 1562), and annuities based on retired or retainer pay under chapter 73 of title 10 of the United States Code [General Military Law].

26 U.S.C. § 6334. Thus, retirement plans for federal employees are not enumerated as among the types of annuities and pension payments exempt from levy under § 6334(a)(6) of the Internal Revenue Code. Nonetheless, we leave it to the district court in the first instance to construe the phrase "except as otherwise provided by Federal laws" under the applicable anti-alienation provision, if any.

Even more fundamental is an additional issue for the district court to consider on remand: the propriety under the VWPA of the court ordering that the defendant pay restitution from a particular fund. We note that at least one court has differentiated between the district court's authority to order restitution in a particular amount and the authority to enforce the payment of restitution, which has been delegated to the Attorney General. *See United States v. Lampien,* 89 F.3d 1316, 1319–23 (7th Cir.1996) (holding that the district court exceeded its authority by ordering the defendant to execute a quitclaim deed to her homestead to satisfy an order of restitution and reasoning that "a district court is limited to effecting the enforcement of a restitution order only as expressly provided by the VWPA").[13] The VWPA provides that where an offense results "in damage to or loss or destruction of

property of a victim of the offense," the district court may order the defendant to:

(A) return the property to the owner of the property or someone designated by the owner; or

(B) if return of the property under subparagraph (A) is impossible, impractical, or inadequate, pay an amount equal to the greater of—

(i) the value of the property on the date of the damage, loss, or destruction, or

(ii) the value of the property on the date of sentencing,

less the value (as of the date the property is returned) of any part of the property that is returned; ...

18 U.S.C. § 3663(b)(1). Thus, the statute explicitly directs the district court to order restitution of a particular amount or "value" but does not necessarily authorize an order that the restitution be paid from a particular fund or asset. As indicated above, an order of restitution may be *enforced* in the manner provided for collection of fines, which is codified at 18 U.S.C. §§ 3611–3615. In turn, § 3613, entitled "Civil remedies for satisfaction of an *unpaid* fine," provides that an order of restitution "is a lien in favor of the United States upon all property belonging to the person fined." 18 U.S.C. § 3613(a) (emphasis added). Moreover, § 3612, entitled "Collection of an *unpaid* fine," delegates to the Attorney General the responsibility for collecting unpaid fines and requires notification upon determination of delinquency and default. 18 U.S.C. § 3612(c)-(e) (emphasis added). Section 3613(c) also incorporates various enforcement provisions from the In-

---

13. On the other hand, other courts reviewing restitution orders requiring the surrender of pension benefits have been silent about whether the district court has the authority to order the defendant to pay restitution from a particular fund or source. *See United States v. Gaudet,* 81 F.3d 585, 588 (5th Cir.1996) (holding in a habeas case that the district court did not plainly err by ordering the defendant to surrender his pension benefits to satisfy a restitution award); *United States v. Smith,* 47 F.3d 681 (4th Cir.1995) (vacating, based on ERISA anti-alienation provision, a restitution order requiring the defendant to turn over upon receipt each month the entire amount of his pension benefits but not address-

ing question of authority to order payment of restitution from a particular fund). Moreover, the Ninth Circuit has upheld the district court's denial of a Fed.R.Crim.P. 41(e) motion for the return of property seized by the government where the property is needed to satisfy a restitution order. *United States v. Mills,* 991 F.2d 609, 612 (9th Cir.1993) (reasoning that "a restitution order is enforceable as a lien upon all of the defendant's property at the time judgment is entered" and therefore "the district court had a legitimate reason to order that the defendant's property already in the government's possession be applied to his restitution obligation").

ternal Revenue Code. Therefore, it is not clear whether the restitution order itself may require the defendant to "forfeit the full amount of his retirement fund."

We leave for the district court to determine on remand, if the court is inclined to order Comer to surrender his retirement benefits to satisfy its restitution order, the issues of (1) the applicability of the anti-alienation provisions from chapters 83 and 84 of Title 5 and (2) the authority to order restitution from a specific fund or source. We think it prudent for the district court to rule on these questions in the first instance with the benefit of briefing from the parties (which we have not had) and crucial information concerning the nature of Comer's retirement fund.

### C. Enhancement for More than Minimal Planning

■ Comer argues that the district court erred in finding that he engaged in "more than minimal planning" under the Sentencing Guidelines. *See* U.S.S.G. § 2B1.1(b)(5)(A) (1994). In deciding whether to apply the enhancement, the court must consider all of the offense conduct, not just the defendant's conduct. *United States v. Ivery,* 999 F.2d 1043, 1046 (6th Cir.1993). The Guidelines set forth three situations, each of which warrants an enhancement for "more than minimal planning":

> [1] cases where more planning occurs than is typical for commission of the offense in a simple form; [2] cases involving significant affirmative steps to conceal; and [3] cases involving repeated acts over a period of time, unless each instance was purely opportune.

*Id.* (citation omitted). *See also* U.S.S.G. § 1B1.1, application note 1(f) ("In a theft, going to a secluded area of a store to conceal the stolen item in one's pocket would not alone constitute more than minimal planning. However, repeated instances of such thefts on several occasions would constitute more than minimal planning."); *United States v. Ellerbee,* 73 F.3d 105, 108 (6th Cir.1996).

In the instant case, Comer's conduct took place over several months (September 1993 to August 1994). Furthermore, the district court found that the scheme was complicated because the defendant first had to steal the items from the mail, then package and sell them. Sentencing Tr. at 26–27. Most significantly, the district court found that transporting and negotiating the bonds involved a "somewhat elaborate scheme." *Id.* Since Comer has suggested no reason why these factual findings are clearly erroneous, we affirm the district court's finding that Comer engaged in more than minimal planning.

### D. Enhancement for Obstruction of Justice

■ Section 3C1.1 of the Sentencing Guidelines provides for a two point enhancement if a defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense...." U.S.S.G. § 3C1.1. Application note 3(b) to § 3C1.1 states that the enhancement applies when a defendant commits, suborns, or attempts to suborn perjury.

To determine what constitutes perjury, courts rely on the definition under the federal criminal perjury statute, 18 U.S.C. § 1621. *United States v. Dunnigan,* 507 U.S. 87, 94, 113 S.Ct. 1111, 1116, 122 L.Ed.2d 445 (1993). "A witness testifying under oath or affirmation violates this statute if she gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake or faulty memory." *Id. See also United States v. Alvarez,* 927 F.2d 300, 303 (6th Cir.), *cert. denied,* 500 U.S. 945, 111 S.Ct. 2246, 114 L.Ed.2d 487 (1991) (holding that a district court must apply section 3C1.1 if it finds that a defendant "testified untruthfully as to a material fact while under oath."). Moreover, the district court must either make specific findings for each element of perjury or at least make a finding "that encompasses all of the factual predicates for a finding of perjury." *Dunnigan,* 507 U.S. at 95, 113 S.Ct. at 1117.

■ We require the sentencing judge to identify specific instances justifying the enhancement for obstruction of justice. *See United States v. Spears,* 49 F.3d 1136, 1143

(6th Cir.1995). In the instant case, the district court found that the defendant committed perjury several times:

> He said he bought the jewelry at a flea market; he bought it also at Fred P. Gattas [retail store]; that Bob Heywood lived across the street;
>
> \* \* \* \* \* \*
>
> I mean the evidence in this case shows he didn't buy the jewelry at the flea market or at Fred P. Gattas at that closing. He didn't have a neighbor across the street— he couldn't even remember who the neighbor was. He didn't have a neighbor across the street who was involved in going with him to purchase jewelry. He didn't go to Missouri, he didn't go somewhere in Tennessee, he didn't go anywhere to buy this jewelry that he sold at the Bulk Mail Center.
>
> \* \* \* \* \* \*
>
> He got caught red-handed and then he denied it, and he denied it in front of the jury under oath.

Sentencing Tr. at 21–23. Moreover, Comer lied when he testified that he found the bonds at an Amoco station. J.A. at 217–18. Accordingly, we hold that the district court did not err by applying the enhancement for obstruction of justice under section 3C1.1 of the Sentencing Guidelines.

### E. Amount of the Loss

The district court added nine levels to Comer's offense level because the amount of the loss, $167,050.87, exceeded $120,000, but was less than $200,000. *See* U.S.S.G. § 2B1.1(b)(1)(J). "Loss" is defined as

the value of the property taken, damaged, or destroyed. Ordinarily, when property is taken or destroyed the loss is the fair market value of the particular property at issue. Where the market value is difficult to ascertain or inadequate to measure harm to the victim, the court may measure loss in some other way, such as reasonable replacement cost to the victim.

U.S.S.G. § 2B1.1, application note 2. "In stolen property offenses ..., the loss is the value of the stolen property determined as in a theft offense." *Id.* The district court found, by a preponderance of the evidence, that the defendant committed all of the acts of theft set forth in the indictment, including stealing the jewelry referred to in Count Two, plus uncharged thefts on September 28, 1993 and March 25, 1994. *See* Sentencing Tr. at 7–8, 24. The district court adopted the list of items and parcels involved in the offense set forth in the PSR. Sentencing Tr. at 19–20; J.A. 42, 24. Comer argues that the conduct charged in Count Two and the September 28, 1993 conduct were not proven by a preponderance of the evidence.[14]

At the sentencing hearing, the district court acknowledged that with respect to Count Two, "there was not a clearly identifiable, beyond question, piece of jewelry that [Comer] was caught red-handed with." Sentencing Tr. at 7–8. Moreover, Comer's counsel argued, and the court acknowledged that the mail bag was found in a locked room at the main post office and there was no proof that the bag had gone through the MBMC. *Id.* at 10–11. Nonetheless, the district court found that the bag was "in a tattered way" and that "after all the discussion about how

---

14. Comer's brief does not specifically mention the uncharged March 25, 1994 conduct, for which the district court added $1,321.60 to the amount of the loss. The uncharged September 28, 1993 conduct resulted in a loss of $9,900. J.A. at 42. We analyze only whether it was error for the district court to include the amount attributed to Count Two in the amount of the loss because the inclusion of the uncharged conduct alone, even if error, would not affect the calculation. We also note that in arguing that the district court erred by allowing the introduction of testimony relating to uncharged conduct, Comer did not claim that the government failed to prove by a preponderance of the evidence that such conduct occurred.

Count Two results in a loss in the amount of $97,100.92, which incidentally is far larger than the loss relating to each of the counts of conviction. Therefore if the district court erred by including Count Two, the total amount of the loss would be $69,949.95, which would result in the addition of seven levels to Comer's base offense level, rather than nine levels. *See* U.S.S.G. § 2B1.1(b)(1)(H). Comer argued that the district court should have added only six levels for amount of the loss because the loss should be limited by the amount the Postal Service had paid on claims rather than the claims submitted. We will address this argument below.

things got back and forth and the manner in which someone in Mr. Comer's position would have access," the preponderance of the evidence showed that the bag went "through the Bulk Mail Center." *Id.* at 11. The district court further found that "Mr. Comer clearly had access to it. He was involved in a process of stealing these jewelry packs and he simply stole this." *Id.* Thus, the district court based its decision to include amounts relating to the acquitted conduct on its perception that Comer had stolen more jewelry than the amount with which he was "caught red-handed":

> It is clear that Mr. Comer was stealing jewelry, stealing a lot of jewelry, more jewelry than we will ever be able to specifically determine because of the nature of the whole thing that was going on. He was a supervisor, he had access to the area. He was selling it out of his briefcase at the—or out of plastic bags, but usually he had them in a briefcase at the Bulk Mail Center. He was pawning it around the city at different pawn shops. And I don't think—I think it is fair to say we will never know the extent of his theft, and I think it is fair to say that the record would support a conclusion that this is a conservative estimate of the amount that he stole, that the record suggests that—that this was occurring before we even had the first count because the government wasn't able to tie it all together.
>
> So that's why I'm very comfortable that this is a conservative estimate, that, you know, a larger amount could be attributed to Mr. Comer, but it is not our objective to guess. We simply make the most reasonable estimate we can under the circumstances. I'm very certain that that is what we've done. I'm very comfortable with that and I do think it is certainly within his favor. I think that there could have been an argument made that he stole a considerably greater amount of jewelry.

*Id.* at 16–17.

■ A district court may consider acquitted conduct in determining a defendant's offense level under the Sentencing Guidelines if the government has proven by a preponderance of the evidence that relevant, acquit-

ted conduct occurred. *United States v. Moreno,* 933 F.2d 362, 374 (6th Cir.), *cert. denied,* 502 U.S. 895, 112 S.Ct. 265, 116 L.Ed.2d 218 (1991). Similarly, the district court may consider uncharged criminal conduct. *United States v. Aideyan,* 11 F.3d 74, 76 (6th Cir. 1993) (citing U.S.S.G. §§ 1B1.3(b) and 4A1.3). *See also United States v. Lloyd,* 10 F.3d 1197, 1221 (6th Cir.1993) (holding that drug quantities from acquitted counts could be used in calculating defendant's sentence), *cert. denied,* —— U.S. ——, 114 S.Ct. 1569, 128 L.Ed.2d 213 (1994), *and cert. denied,* —— U.S. ——, 114 S.Ct. 2172, 128 L.Ed.2d 893 (1994), *and cert. denied,* —— U.S. ——, 115 S.Ct. 219, 130 L.Ed.2d 147 (1994). However the district court may not merely attribute additional conduct to the defendant based on speculation.

■ According to the government's evidence, the defendant sold several items of jewelry to fellow employees at the MBMC and used other items as collateral for loans from pawn shops. However, the government has pointed to no evidence linking the jewelry sold or pawned with the jewelry in the parcels mailed on or about January 12, 1994. The government cites the testimony of several postal employees who purchased jewelry from Comer, but it did not match any descriptions, exhibit numbers, dates, or postal receipts that could identify the jewelry sold as the jewelry stolen. Although there is testimony showing that the package never arrived at the Memphis General Mail Facility and that the next scheduled destination is the MBMC, J.A. at 446, 452–53, the government provides no evidence linking Comer to that package.

Courts may estimate the amount of the loss under section 2B1.1:

> For the purposes of subsection (b)(1), the loss need not be determined with precision. The court need only make a reasonable estimate of the loss, given the available information. This estimate, for example, may be based upon the approximate number of victims and the average loss to each victim, or on more general factors such as the scope and duration of the offense.

U.S.S.G. § 2B1.1, application note 3. For example, in drug quantity cases, a defendant

may be held accountable for the sale of drugs other than those found on his or her person at the time of arrest if the evidence shows that the defendant sold a certain quantity of a certain drug every month. *E.g., Moreno,* 933 F.2d at 374. However, a court may not attribute a loss to a defendant based on mere speculation. *See United States v. Zimmer,* 14 F.3d 286, 290 (6th Cir.1994) (holding that the "District Court may not 'create' a [drug] quantity when there is absolutely no evidence to support that amount"); *United States v. Walton,* 908 F.2d 1289, 1302 (6th Cir.) (to hold a defendant responsible for a specific quantity of drugs under section 2D1.4, court must be able to conclude that any estimate is supported by a preponderance of the evidence), *cert. denied,* 498 U.S. 906, 111 S.Ct. 273, 112 L.Ed.2d 229 (1990), *and cert. denied,* 498 U.S. 989, 111 S.Ct. 530, 112 L.Ed.2d 541 (1990), *and cert. denied,* 498 U.S. 990, 111 S.Ct. 532, 112 L.Ed.2d 542 (1990).

Because the amount of the loss is a question of fact, we must affirm the district court's finding as long as it is not clearly erroneous. *United States v. Moreno,* 933 F.2d at 374. "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* (quoting *United States v. Perez,* 871 F.2d 45, 48 (6th Cir.), *cert. denied,* 492 U.S. 910, 109 S.Ct. 3227, 106 L.Ed.2d 576 (1989)). We are convinced that such a mistake has been committed here because the district court attributed to Comer the loss associated with the

conduct in Count Two based on the sole fact that Comer stole jewelry from the MBMC on several other occasions. There must be some evidence regarding this transaction beyond the evidence of theft on other occasions in order for a judge to find by a preponderance of the evidence that Comer was connected to the conduct in Count Two.[15]

■ Comer also argues that he should not be responsible for claims that were filed with the Postal Service but not paid. The district court relied on the PSR, which calculated the amount of the loss by using the retail values claimed by the victims. Without citation to authority, Comer claims that he should only have to pay restitution on claims that the post office has explicitly found to be valid. However, the district court makes its own determination about what claims warrant restitution. The district court identified claims paid by the Postal Service in order to avoid double payment to victims already compensated and to assure that the appropriate amount would be repaid to the Postal Service. J.A. at 55–56. Therefore, we reject Comer's argument as to the inclusion of claims not paid by the Postal Service.[16]

## IV. CONCLUSION

We **VACATE** Comer's sentence and **REMAND** for resentencing in accordance with this opinion because the district court clearly erred in determining the amount of the loss and because the restitution order includes an amount relating to uncharged conduct and

---

15. There may have been evidence presented at trial to support a finding by a preponderance of the evidence that Comer committed the conduct in Count Two. Although no such evidence was presented on appeal, the district court may consider it on remand, if it exists. Even if we were inclined to comb the record ourselves, we are without authority to make factual findings.

16. We note that Comer did not argue that the claims not paid by the Postal Service were of questionable validity. Nor did Comer challenge the use of the postal patrons' estimates of the value of their stolen property to the extent that the Postal Service paid their claims. In *United States v. Rivers,* 917 F.2d 369 (8th Cir.1990), the Eighth Circuit vacated the defendant's sentence where, in determining the amount of the loss under section 2B2.1, the district court had relied solely on a police officer's hearsay testimony that

the owner of stolen property estimated its value to be a certain amount. *Id.* at 372–74 (reasoning that an owner's opinion as to the value of stolen property may be considered for sentencing purposes but value should not be based on speculation alone). Although we express no opinion as to the correctness of *Rivers,* we note that in that case the owner, who had been the victim of a burglary of her residence, did not present any factual basis for her opinion regarding the value of her property and admitted that many of the items stolen had been gifts. *Id.* at 373. In the instant case, the owners estimated the value of their stolen property when they submitted claim forms to the Postal Service. As in *Rivers,* these forms were not scrutinized for any factual basis. The PSR indicates that they were available in the U.S. Attorney's office. J.A. at 42.

charges of which Comer was acquitted. However, we **AFFIRM** Comer's conviction and sentence in all other respects.