107 F.3d 872
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jeffrey Allen SOLOCHEK, Defendant-Appellant.
 No. 96-5970.
 United States Court of Appeals, Sixth Circuit.
 Feb. 25, 1997.
 
 Before: KENNEDY, NELSON, and GODBOLD*, Circuit Judges.
 DAVID A. NELSON, Circuit Judge.
 
 
 1
 This is a wire fraud case in which the defendant appeals his sentence. Two questions are presented for review: (1) whether the district court erred in enhancing the defendant's guideline offense level for "more than minimal planning," and (2) whether the court erred in its calculation of the loss. Answering "no" to the first question and "yes" to the second, we shall remand the case for resentencing.
 
 
 2
 * The defendant, Jeffrey Allen Solochek, was the proprietor of a wholesale software business (LED Wholesale) and a retail software dealer (Best Software and Accessories). In the course of his business Mr. Solochek purchased (at a 95 percent discount from published retail prices) approximately 10,000 pieces of outdated Microsoft software that had been donated to a charity.
 
 
 3
 Mr. Solochek was able to resell most of the outdated software, but some 203 pieces remained unsold. He learned from a competitor that Microsoft would send free upgrades to purchasers of older software--but a Microsoft representative advised that proof of purchase was required and that scrap software was not eligible for free upgrades.
 
 
 4
 Mr. Solochek created a false invoice to evidence purchase of the 203 pieces of software, and he transmitted the false invoice by facsimile to Microsoft's offices in Seattle, Washington. The invoice evoked skepticism because the software was outdated and the quantity was large. (The invoice also indicated that the sale was made by Best Software, a retailer, to LED, a wholesaler; Microsoft apparently did not notice this unusual aspect of the "sale.")
 
 
 5
 Microsoft called Best Software to confirm the sale. The call was taken by employee Sam Baird, who sought guidance from Mr. Solochek. The latter printed another copy of the invoice, showed it to Mr. Baird, and instructed him to call Microsoft to confirm the sale. Solochek also told Baird not to divulge the relationship between Best Software and LED. Mr. Baird did as he was told.
 
 
 6
 A few weeks later Mr. Solochek received the requested upgrades, none of which was packaged for retail sale. On its own initiative, Microsoft also included 97 copies of Microsoft Assistant, a program used to fix "bugs" in two of the upgrades. Although Microsoft Assistant can be purchased separately, it is "bundled" with upgrades at no cost.
 
 
 7
 Pursuant to a plea agreement, Mr. Solochek pleaded guilty to two counts of a five-count indictment.[1] He was later sentenced under the 1995 version of the United States Sentencing Guidelines.
 
 
 8
 The guideline for fraud offenses, U.S.S.G. § 2F1.1, sets the base offense level at 6. The district court adjusted this offense level for more than minimal planning ( k 2), acceptance of responsibility ( - 2), and a loss of more than $40,000 ( k 5). Pursuant to § 3D1.4, the offense level was further increased for multiple, unrelated counts of conviction, resulting in an adjusted offense level of 13. Given Mr. Solochek's lack of a significant prior criminal history, the guideline sentence range came to 12-18 months. The district court sentenced Mr. Solochek to a year and a day in prison, to be followed by a three-year term of supervised release.
 
 
 9
 The district court adopted the loss computation set forth in a probation officer's presentence investigation report. The report relied on information from Microsoft to the effect that the retail value of the upgraded programs was approximately $47,000; Microsoft later reduced this to $45,877. Mr. Solochek objected to the use of either figure, pointing to retail price lists indicating a range of $37,467-$41,133. Mr. Solochek also argued that the appropriate measure of loss was wholesale value, which he claimed was less than $20,000--and he objected to the "more than minimal planning" adjustment as well. The district court rejected his arguments, and this appeal followed.
 
 II
 
 10
 We must give "due deference" to the district court's decision to apply the "more than minimal planning" enhancement. United States v. Comer, 93 F.3d 1271, 1278 (6th Cir.), cert. denied, 117 S.Ct. 595 (1996). "[M]ore than minimal planning" means
 
 
 11
 "more planning than is typical for commission of the offense in a simple form. 'More than minimal planning' also exists if significant affirmative steps were taken to conceal the offense...."
 
 
 12
 " 'More than minimal planning' is deemed present in any case involving repeated acts over a period of time, unless it is clear that each instance was purely opportune." U.S.S.G. § 1B1.1, Application Note 1(f).
 
 
 13
 In United States v. Ellerbee, 73 F.3d 105, 107-08 (6th Cir.1996), this court held that the "more than minimal planning" enhancement "does not require that the offense be committed in its most complicated form ...; rather it just must be something more than the crime in its simplest form."
 
 
 14
 Mr. Solochek's wire fraud consisted of only a few steps: creating and transmitting a false invoice, duplicating the false invoice for the employee, and instructing the employee to confirm the sale to Microsoft and not to divulge the relationship between Best Software and LED. The scheme was not a particularly complex one. The first step, according to Mr. Solochek, was hasty and ill-planned. The rest was merely a quick reaction to an unexpected follow-up call. Mr. Solochek argues that if his crime had really involved any significant planning, he would not have been caught.
 
 
 15
 The enhancement does not require a criminal mastermind, and we believe the district court's conclusion that the crime involved more than minimal planning was a permissible one. As we have seen, Mr. Solochek created a false invoice from one corporation to another. When a Microsoft representative called to ask about the alleged sale, Mr. Solochek printed another copy of the false invoice and directed an employee to confirm the sale. The employee was further directed not to reveal the relationship between Best Software and LED. We think these actions were "significant affirmative steps ... to conceal the offense" within the meaning of Application Note 1(f), U.S.S.G. § 1B1.1 Mr. Solochek's crime involved something more than wire fraud in a simple form, and Ellerbee teaches that this is sufficient to justify the enhancement.
 
 
 16
 An example of "more than minimal planning" provided by the guidelines lends support to our conclusion:
 
 
 17
 "In an embezzlement, a single taking accomplished by a false book entry would constitute only minimal planning. On the other hand, creating purchase orders to, and invoices from, a dummy corporation for merchandise that was never delivered would constitute more than minimal planning...." U.S.S.G. § 1B1.1, Application Note 1(f).
 
 
 18
 Mr. Solochek's crime did not consist simply of the making of a false statement. As in the example, it involved the preparation of a false invoice for merchandise that was never delivered, and it was followed by steps to conceal the fraud. The enhancement was not improper.
 
 III
 
 19
 We turn next to the quantification of the loss. The applicable guideline, § 2F1.1, indicates that "loss is the value of the money, property, or services unlawfully taken." The loss "need not be determined with precision," U.S.S.G. § 2F1.1, Application Note 8, and a defendant challenging the district court's loss calculation bears the "heavy burden" of proving that "the evaluation of the loss ... was outside the realm of permissible computations." United States v. Jackson, 25 F.3d 327, 330 (6th Cir.), cert. denied, 115 S.Ct. 344 (1994). At the same time the loss calculation must be grounded in the reality of the case. A computation not based on the facts before the court cannot be a permissible one.
 
 
 20
 In United States v. Warshawsky, 20 F.3d 204 (6th Cir.1994), the defendants, who operated a wholesale auto parts business, were convicted on charges involving transportation of stolen auto parts. The district court computed the loss based on retail prices suggested by General Motors, the company from which the parts had been stolen. Because General Motors and the defendants operated exclusively in the wholesale market, this court held that it was clearly erroneous to compute the loss based on retail prices. "[W]e cannot agree," the court stated, "that the proper market for valuation purposes was the retail market, because the retail market has literally no connection to this case." Id. at 213.
 
 
 21
 Warshawsky compels the conclusion that in the case at bar the district court ought not to have adopted a loss calculation based on retail prices. Microsoft does not sell its products in the retail market; it sells only to wholesale distributors. Microsoft's loss thus cannot be measured by retail value. To set the loss at $45,877 was clear error.
 
 
 22
 It is true that Mr. Solochek owned both a wholesale and a retail software business, but this changes nothing. The only involvement of the retailer was as the purported seller in a non-existent sale. The software upgrades, which were not packaged for retail sale, were shipped to Mr. Solochek's wholesale business, not to the retailer. As in Warshawsky "the retail market has literally no connection to this case." Id. at 213.
 
 
 23
 United States v. Ellerbee, 73 F.3d 105 (6th Cir.1996), on which the government relies, does not suggest otherwise. The victim in that case, Columbia House Record Club, sold its products directly to consumers at retail prices. The defendant, who acquired thousands of compact discs and cassette tapes at Columbia House's special introductory prices, resold these items in the retail market as well. Neither the victim nor the defendant was operating in the wholesale market. Accordingly, the Ellerbee court held that the use of retail prices to compute the loss was correct. Id. at 108-09. In the case at bar, by contrast, the victim operates exclusively in the wholesale market--and the use of retail prices, in our view, was incorrect.
 
 IV
 
 24
 Although it appears highly likely that the loss in this case will prove to be less than $40,000, we note that in practical terms Mr. Solochek will be entitled to no more than a one-level reduction in his offense level. The adjusted offense level for the wire fraud conviction is 13. The base offense level for the false oath conviction is 12. U.S.S.G. § 2J1.3. After an upward adjustment for multiple, unrelated counts (§ 3D1.4) and a downward adjustment for acceptance of responsibility, the adjusted offense level on the false oath conviction is still 12. Because Mr. Solochek does not challenge his sentence on that conviction, his adjusted offense level must be at least 12.
 
 
 25
 The sentence is VACATED, and the case is REMANDED for further proceedings not inconsistent with this opinion.
 
 
 
 *
 The Honorable John C. Godbold, United States Circuit Judge for the Eleventh Circuit, sitting by designation
 
 
 [1]
 One of the counts to which he pleaded guilty charged him with wire fraud. The other charged him with making a false oath in bankruptcy proceedings